## Limestone Products and Supply Company v. Tom Brown, Inc., Appellant.

Argued April 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Fred C. Houston, Jr.,* with him *Houston & Houston,* for appellant.

*Karl E. Weise,* with him *Hirsch, Truxall & Weise,* for appellee.

OPINION BY ERVIN, J., June 13, 1962:

Plaintiff, Limestone Products and Supply Company, instituted this action in assumpsit against Tom Brown, Inc. for payment of money alleged to be due under a contract for delivery of ready mixed concrete. Plaintiff recovered a verdict of $877.89 with interest of $272.15, making a total of $1,150.04. The defendant, after the dismissal of its motion for new trial and the entry of a judgment upon the verdict, took this appeal.

Appellant alleges that the verdict was against the weight of the evidence by reason of the failure of the plaintiff to establish that plaintiff had received orders from the defendant, all orders having been made over the telephone by an unidentified person. Ordinarily a telephone conversation between a witness and another person is admissible only when the identity of the person with whom the witness was speaking is satisfactorily established: *Burton v. Pacific Mutual Life Insurance Co.,* 368 Pa. 613, 617, 84 A. 2d 310. The rule, however, is subject to a well recognized exception that such a conversation is admissible where circumstances following the conversation indicate that the person who spoke was speaking with authority: *Reach v. National Bedding Co.,* 276 Pa. 467, 471, 120 A. 471; *Smithers v. Light,* 305 Pa. 141, 145, 157 A. 489; *Com. v. Prezioso,* 157 Pa. Superior Ct. 80, 85, 41 A. 2d 350; *Kobierowski v. Commonwealth Mutual Insurance Co.,* 175 Pa. Superior Ct. 387, 392, 393, 105 A. 2d 179; 31 C.J.S., Evidence, §188, p. 910.

Thomas Smart, secretary and treasurer of plaintiff, testified that either in October or November 1, 1955 some person from the defendant called the plaintiff on the telephone and told plaintiff "to haul concrete to Mall Bros. to finish up houses he had started."

There was no limit placed upon the amount of concrete and they were to haul it "whenever they let us know." He testified they delivered concrete and rods to the Mall Bros. job on November 1, 2, 3, 4 and 9, 1955, at a cost of $418.89, and that they billed the defendant on November 16 for these deliveries. This invoice No. 1980 was made out to Tom Brown, Inc., the defendant, and it clearly showed that the concrete had been delivered to "Mall Bros. Job, Santa Fe Dr. Bethel." He further testified that they delivered concrete and rods to the Mall Bros. Job, Cremona Drive, on November 17, 18, 23, December 5, 6, 8 and 9, 1955, at a cost of $859.45, and that this invoice No. 2149 was sent to the defendant on December 13, 1955. He also testified they delivered concrete to Mall Bros. on December 14 at a cost of $18.44 and that this invoice No. 2166 was sent to the defendant on December 22, 1955.

Defendant's witness testified that none of the concrete or rods covered by invoices Nos. 2149 and 2166 had been ordered by the defendant.

Smart also testified that on December 23, 1955 someone from the defendant called and told them to stop delivering materials to Mall Bros. It should be noted that on this date Mall Bros. filed a petition for voluntary bankruptcy. The defendant knew this and also knew, as far back as November, that Mall Bros. were in financial difficulties. The defendant admits that it received invoice No. 1980 on or about November 16, 1955 and admits that it paid this bill on December 15, 1955. If upon receipt of this invoice the defendant had called the plaintiff and told it not to deliver any more materials to Mall Bros. little or none of the materials delivered thereafter and shown by invoices Nos. 2149 and 2166 would have been delivered to the "dying horse," Mall Bros. The fact that the defendant did pay the November 16, 1955 invoice for the materials which

went to Mall Bros. is a strong circumstance that the orders for these materials had been given over the telephone by some person who was authorized by the defendant to do so. The fact that the defendant called plaintiff on the telephone on December 23, the date of Mall Bros.' bankruptcy, was also a strong circumstance that the defendant had knowledge of the telephone orders theretofore given to the plaintiff for the delivery of materials to the Mall Bros. job.

The only evidence presented by the defendant that the orders were not authorized was a statement of defendant's treasurer that blanket orders were not given for delivery to customers. Under cross-examination he admitted that over-all orders could have been given for up to 50 square yards of concrete and that he didn't know what arrangements the defendant's shipping agent made as he was deceased. Defendant also admitted that it had been selling a large quantity of building materials to Mall Bros. and that the salesman who serviced the Mall Bros. account was also unavailable as he was no longer with the defendant firm. The defendant also admitted that on at least two occasions orders for concrete were placed with the plaintiff by telephone. While plaintiff's witness Smart could not identify the voice of the person with whom he talked, he did state that it was the same person with whom he had all the conversations.

We believe that the evidence in this case was sufficient to show circumstances following the receipt of the telephone orders which were sufficient to go to the jury and to indicate that the person who spoke in behalf of the defendant was speaking with authority.

Judgment affirmed.