619 A.2d 1363

Paula BONAVITACOLA, Individually and as Administratrix of the Estate of Dominic S. Bonavitacola, also Known as Dominic J. Bonavitacola, Dec'd., Appellee,

v.

Henry J. CLUVER, D.M.D., and William E. Munley, D.M.D., and Henry J. Cluver, D.M.D., William E. Munley, D.M.D., F.A.G.D., P.C.

Appeal of Henry J. CLUVER, D.M.D. and Henry J. Cluver, D.M.D., William E. Munley, D.M.D., F.A.G.D., P.C., Appellants.

Superior Court of Pennsylvania.

Argued Sept. 29, 1992.

Filed Feb. 16, 1993.

Jonathan D. Herbst, Philadelphia, for appellants.

Roberta D. Pichini, Philadelphia, for appellee.

Before CAVANAUGH, KELLY and HOFFMAN, JJ.

KELLY, Judge:

In this case we are called upon to determine whether we must quash the appeal because the order denying appellants' post-verdict motions was not reduced to judgment. We conclude that quashal is inappropriate. Accordingly, we deny appellee's motion to quash and address appellants' arguments. Finding merit in none of appellants' arguments, we affirm.

## FACTS AND PROCEDURAL HISTORY

Giving all reasonable inferences to the appellees, the jury verdict winners, we summarize the history of this case as follows. Dominic Bonavitacola had scheduled a dentist appointment with appellant, Dr. Cluver, for October 1, 1987. Mr. Bonavitacola had routinely taken penicillin before and after dental procedures that involved the risk of bleeding, because he had two heart conditions, mitral valve prolapse and rheumatic heart disease, which rendered his heart susceptible to contracting an infection, bacterial endocarditis, if ordinary mouth bacteria entered the blood stream.

Because he was aware of his condition, Mr. Bonavitacola telephoned Dr. Cluver, requesting whether he would receive a prescription for penicillin before the October 1, 1987 visit. Although Dr. Cluver was also aware of Mr. Bonavitacola' condition, see, e.g., Reproduced Record at 1370a (notes on Mr. Bonavitacola's medical history state: "has murmur—since

birth[;] needs penicillin before any dental treatment"), he told Mr. Bonavitacola that he would not need the antibiotic for the October 1, 1987 procedure. Apparently, Dr. Cluver believed that the scheduled procedure, superficial work on "tooth number 15," would not involve bleeding.

The dentist, using a drill, accessed not only the top of that tooth, but also the back of the tooth, at the gum line. The procedure caused the gums to bleed. Mouth bacteria, *streptococcus viridans*, entered Mr. Bonavitacola's blood stream and, still alive due to the absence of penicillin, thrived in the heart, causing bacterial endocarditis.

Mr. Bonavitacola suffered pain and underwent intravenous therapy. The infections in his heart spread and eventually caused brain damage. A brain hemorrhage was the ultimate cause of Mr. Bonavitacola's death on February 13, 1988, only five and one-half months after his dental visit with Dr. Cluver.

Mrs. Bonavitacola, individually, and as administratrix of her husband's estate, instituted this action against Dr. Cluver, Dr. Munley, and their corporation, Henry J. Cluver, D.M.D. and William E. Munley, D.M.D., F.A.G.D., P.C. At trial, before Judge Lawhorne and a jury, the above facts were adduced. The jury rejected appellants' theories that the October 1, 1987 procedure was not likely to result in bleeding, that Dr. Cluver had indeed prescribed penicillin for the procedure, and that Mr. Bonavitacola was contributorily negligent. A directed verdict was entered in favor of Dr. Munley. However, the jury entered verdicts against Dr. Cluver and the corporation. After a separate hearing on damages, the jury returned a verdict for $3,169,661.00, which the court molded to $4,032,-918.10, to reflect delay damages pursuant to Pa.R.Civ.P. 238.

Appellants filed post-trial motions, seeking a new trial. On October 17, 1991, Judge Lawhorne entered an order denying appellants' motion for a new trial and an amended motion for a new trial. Appellants filed this appeal on November 7, 1991. As Judge Lawhorne had left the bench, Judge Cronin filed an opinion in support of the order denying post-verdict motions on May 28, 1992.

On January 3, 1992, the Central Legal Staff of this Court sent a letter to appellants' attorney advising that the appeal may be dismissed because judgment had not been entered and an order denying post-trial motions is interlocutory. Appellants' attorney responded, explaining that he would not praecipe for judgment because such an action would render appellants liable for more than the amount for which they were insured. Accordingly, counsel refused to praecipe for judgment.

After advising appellants of her intention to move this Court to quash the appeal with prejudice, appellee filed a motion to quash on February 26, 1992. Appellants responded, and we deferred resolution of the motion to quash.

## APPEALABILITY OF ORDER DENYING POST–VERDICT MOTIONS

Appellee argues that the instant appeal should be quashed with prejudice because appellants did not reduce to judgment the order denying post-trial motions. Appellee further argues that, in this case, we should not consider this appeal as one from judgment because appellants have openly refused to follow directives from this Court's Central Legal Staff to praecipe the prothonotary to enter judgment. Counsel for appellants refuses to praecipe for the entry of judgment because such an action would render appellants liable for an amount greater than their professional liability insurance indemnifies them. For the reasons that follow, we deny appellants' motion to quash.

Although an order denying post-trial motions is interlocutory, Pa.R.A.P. 301(a), (c) and (d) and 904(d), we allow an appeal lying from an interlocutory order when the only step to be taken is the entry of judgment. *See e.g. McCormick v. Northeastern Bank of PA,* 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989); *Summit Fasteners v. Harleysville Nat'l Bank,* 410 Pa.Super. 56, 59 n. 1, 599 A.2d 203, 205 n. 1 (1991), *allocatur denied,* 530 Pa. 633, 606 A.2d 902 (1992). As long as the order from which a party appeals "was clearly intended to be a final pronouncement on the matters discussed

in the opinion [accompanying the order], ... the appeal is properly before us and ... we have jurisdiction to address the parties' claims." *Murphy v. Murphy*, 410 Pa.Super. 146, 152, 599 A.2d 647, 650 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992). The rationale behind treating this appeal as one from an entered judgment is to allow the appeal which is in progress to proceed, economizing judicial resources. *McCormick, supra; Summit Fasteners, supra. See also Murphy v. Murphy, supra,* 410 Pa.Super. at 152, 599 A.2d at 650. Were we to quash an appeal from an order which, except for the entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow. *See McCormick, supra, citing Commonwealth v. Allen,* 278 Pa.Super. 501, 505 n. 3, 420 A.2d 653, 654 n. 3 (1980).

These principles apply, notwithstanding a direct refusal by an appellant to enter judgment. The policy of judicial economy does not apply only with the willing participation of counsel. The policy behind our entertaining the merits of an appeal from an otherwise interlocutory order is to efficiently dispose of an appeal which cannot be stopped from ever returning.

■ Our research has not disclosed a sanction of "quashing with prejudice." Pennsylvania Rule of Appellate Procedure 902 provides:

### RULE 902. MANNER OF TAKING APPEAL

An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Therefore, the failure to praecipe to enter judgment "does not affect the validity of the appeal." *Id.* Accordingly, were we to exercise the option provided by the rule and remand, we would have no authority to quash with prejudice against an appellant to cure the omission and file a second appeal.

Because the court is without the power to sanction with "a quashal with prejudice," the policy of promoting judicial economy is present, even when an appellant defies a warning by our Central Legal Staff. We can quash without prejudice, but, as we have consistently recognized, that course of action serves to consume more judicial resources, to encourage more litigation costs, and to postpone the disposition of the appeal.

In the instant case, in the interests of judicial economy, we deny appellee's motion to quash.[1] As the appeal is ripe for disposition, we decide the issues raised by the parties.

On appeal, appellants present the following issues for our review:

1. WHETHER IN A DENTAL MALPRACTICE CASE INVOLVING WHETHER PRE–MEDICATION WITH PENICILLIN WAS REQUIRED BEFORE THE ANTICIPATED PROCEDURE, THE TRIAL COURT ERRED IN REFUSING DEFENDANTS' REQUEST THAT THE JURY BE GIVEN THE "TWO SCHOOLS OF THOUGHT" INSTRUCTION.

2. WHETHER THE TRIAL COURT ERRED BY INFERRING [sic] TO THE JURY, IN ITS CHARGE, THAT DEFENDANTS WERE PROTECTED BY INSURANCE COVERAGE.

3. WHETHER THE TRIAL COURT ERRED IN ADMITTING, OVER OBJECTION, HEARSAY TESTIMONY BY THE DECEDENT'S WIDOW AS TO WHAT THE DENTIST ALLEGEDLY TOLD HER

---

1. We note that the parties do not dispute that judgment is ready to be entered. *See* Pa.R.Civ.P. 227.4(2) (upon praecipe of a party, prothonotary shall "enter judgment when a court grants or denies relief but does not itself enter judgment"). We further emphasize that appellee did not praecipe the prothonotary to enter judgment.

HUSBAND CONCERNING THE NEED FOR PRE–
MEDICATION WITH PENICILLIN.

4. WHETHER THE TRIAL COURT ERRED IN RUL–
ING THAT THE VERDICT WAS NOT EXCESSIVE.

Appellants' Brief at 3.

### Two Schools of Thought Charge

■ Appellants argue that the trial court erred in not instructing the jury regarding the "two schools of thought" doctrine. We cannot agree.

Our Supreme Court recently revisited the law on the "two schools of thought" doctrine, and provided the following concise statement as the correct one:

Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.

*Jones v. Chidester*, 531 Pa. 31, 40, 610 A.2d 964, 969 (1992). The Court further held that the trial court must initially determine whether the defendant has introduced sufficient evidence that "there is a considerable number of professionals who agree with the treatment employed by the defendant." *Id.*

■ If the defendant carries its burden of substantiating, with factual reasons, that its actions were sanctioned by a recognized school of thought, the court must submit to the jury the question of whether "there are two legitimate schools of thought such that the defendant should be insulated from liability." *Id.* *See also Levine v. Rosen*, 394 Pa.Super. 178, 184, 575 A.2d 579, 582 (1990), *allocatur granted*, 526 Pa. 636, 584 A.2d 319 (1991) (trial court should instruct jury on two schools of thought if "evidence potentially supports" either school).

■ After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the distinguished Judge, The Honorable Joseph A. Cronin,

Jr.,[2] we determine that there is no merit to appellants' argument that the jury should have been charged on the two schools of thought doctrine. The trial court opinion comprehensively discusses and properly disposes of the question presented. Accordingly, we affirm on the basis of that opinion as set forth below.

It is upon [appellees' expert,] Dr. Souviron's substitution of tissue bleeding for gingival bleeding that defendants claim creates a second and distinct school of thought. However, the fact that Dr. Souviron would slightly alter the AHA/ADA standards to include all tissue bleeding is neither relevant to the case at hand nor does it comprise a second school of thought. It is not relevant because it was the gingival bleeding and not other tissue bleeding that caused the bacteremia and subsequent death. Thus, as to the cause of death, Dr. Souviron was one hundred percent in agreement with AHA/AMA Standards. Furthermore, Dr. Souviron's desire to expand the AHA/AMA standards to substitute tissue bleeding for gingival bleeding does not create a second school of thought. Dr. Souviron was ex-

**2.** We note that Judge Cronin was authorized to write the opinion in support of Judge Lawhorne's order denying post-trial relief. *See Hutchison v. Luddy*, 417 Pa.Super. 93, 113, 611 A.2d 1280, 1289 (1992) (when, due to death, retirement or expiration of judicial commission, predecessor judge is unable to rule on motion, successor judge is empowered to rule "to the same extent that his or her predecessor could have"). *See also Commonwealth v. Cannon*, 387 Pa.Super. 12, 563 A.2d 918 (1989), *allocatur denied sub nom, Commonwealth v. Reap*, 525 Pa. 597, 575 A.2d 564 (1989) ("The death, disqualification or absence of a judge will not deprive the surviving or remaining judges of authority to hold court and transact the business of the court and, in fact, to exercise all functions pertaining to the particular court."). Moreover, the case was tried before a jury, so Judge Lawhorne had made no credibility determinations or factual findings. *See Commonwealth ex rel. Davis v. Davis*, 268 Pa.Super. 401, 408 A.2d 849 (1979) (where predecessor judge rendered order, successor judge should not have written opinion thereon, as the order was based upon predecessor judge's factual findings). Furthermore, we may consider Judge Cronin's opinion, even though it was filed after the appeal was filed, because neither party has questioned his authority to write an opinion explaining reasons for the order and because Judge Cronin did not undertake to reconsider the order. *First Pennsylvania Bank v. National Union Fire Ins. Co.*, 397 Pa.Super. 612, 619 n. 2, 580 A.2d 799, 803 n. 2 (1990).

plaining that gingival bleeding is not the only type of bleeding that can cause bacteremia. Moreover, Dr. Souviron testified that he holds Dr. Cluver to the AHA/AMA Standards, which are the same standards that he holds. (N.T. June 4, 1991, 77–78).

Additionally, defendants propose that this second school of thought was revealed by Dr. Souviron who testified that if there was no bleeding on October 1, 1987, no penicillin prophylaxis was required (page 78 of transcript). This testimony was made after Dr. Souviron originally testified that with an individual diagnosed with mitral valve prolapse, all dental procedures require penicillin prophylaxis (N.T. June 4, 1991, at 40, 41, 43). Defendants claim that these two comments regarding penicillin pre-treatment create two schools of thought. In reality, these are not two conflicting theories of when to pre-treat with penicillin. Rather, penicillin was prescribed as a prophylaxis in the event of bleeding. It is common sense that if no bleeding occurred, then the penicillin was not required. There is no way of knowing in advance whether the decedent would have bled at the time of the procedure, and the statement that the penicillin was not required is nothing more than an after the fact determination made with the benefit of hindsight.

Next, defendants contend that Dr. Bayer, plaintiff's expert witness, admitted to two schools of thought. During cross examination, Dr. Bayer testified essentially that the AHA/AMA standards are guidelines to be used in connection with the treating doctor's common medical sense and experience, and that the risks should be balanced. (N.T. June 5, 1991, 73–77). This testimony does not form the basis of a second school of thought, but merely allows for the prevalence of other individual factors unique to each patient.

Defendant proposes that two schools of thought were revealed by defendants' medical expert witnesses as well as plaintiff's medical expert witnesses. Defendants' witness Dr. Peter Quinn, a dentist and medical doctor, testified that penicillin prophylaxis should be administered in instances likely to induce gingival bleeding. (N.T. June 5, 1991 at 152). This testimony does not produce a second school of

thought, but merely provides a question regarding the type of procedure likely to induce gingival bleeding, and when penicillin should be administered. The jury was free to determine if the procedure performed upon the decedent was likely to induce gingival bleeding, and whether penicillin pretreatment was required. Likewise, Dr. Kaye, another defense expert medical witness[,] testified that penicillin prophylaxis was never intended or is not now intended for simple dental fillings that did not traumatize the gum. (N.T. June 6, 1991 11–12). Again, the issue here is not of two schools of thought, but rather, the type of procedure likely to produce gingival bleeding.

Trial Court Opinion, May 28, 1992, 7–10.

We only emphasize two points. First, appellants' experts failed to articulate that Dr. Cluver adhered to a school of thought which was "advocated by a considerable number of recognized and respect professionals in his given area of expertise." *Jones v. Chidester, supra,* 531 Pa. at 40, 610 A.2d at 969. *See also Morganstein v. House,* 377 Pa.Super. 512, 519, 547 A.2d 1180, 1183 (1988) (where two schools of thought charge could have lead jury to believe that defendant physician was not negligent merely because "his conduct was supported by the testimony of another medical expert," the charge was erroneous and prejudicial to the plaintiff); *D'Angelis v. Zakuto,* 383 Pa.Super. 65, 75, 556 A.2d 431, 435–36 (1989) (Kelly, J., concurring) (the two schools of thought doctrine "applies only to a school of thought advocated by 'a considerable number' of reputable, and respected physicians").

We also emphasize that appellants only adduced from the various experts a consistent school of thought. All agreed that an antibiotic should be given if there was a likelihood of bleeding. The disputed question, whether the scheduled procedure would induce bleeding, was one of fact. We affirm the trial court's decision refusing to charge the jury on the two schools of thought doctrine.

### Implication of Insurance Coverage

Appellants next request a new trial due to the court's alleged implication to the jury that appellants were

adequately insured. We cannot agree that a new trial is required.

In determining whether to reverse a jury verdict due to an erroneous jury charge, an appellate court must look at the jury charge as a whole; if the charge inaccurately describes the law, there is error. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Schecter v. Watkins*, 395 Pa.Super. 363, 374–75, 577 A.2d 585, 590–91, *appeal denied*, 526 Pa. 638, 584 A.2d 320 (1990). However, error alone does not mandate a new trial. To constitute reversible error, a jury instruction must not only be erroneous, but must also be harmful to the complaining party. *Jistarri v. Nappi*, 378 Pa.Super. 583, 588, 549 A.2d 210, 213 (1988); *Mickey v. Ayers*, 336 Pa.Super. 512, 514–15, 485 A.2d 1199, 1202 (1984).

*Summit Fasteners v. Harleysville Nat'l Bank*, 410 Pa.Super. 56, 62, 599 A.2d 203, 206 (1991). Evidence which informs the jury that a defendant would be indemnified against liability is improper, and, if prejudicial, warrants a new trial. *Phillips v. Schoenberger*, 369 Pa.Super. 52, 58–59, 534 A.2d 1075, 1078 (1987). Therefore, on appeal, the issue is whether the jury charge, when read as a whole, was both erroneous and prejudicial.

Appellants cite the following passage as both erroneous and prejudicial:

On that subject, I'll just say quickly in passing, that remember now, Dr. Cluver while a Defendant here is not in any way punished by what you would do with a verdict if you do hold him responsible. He's simply being sued in a lawsuit, and don't—don't be concerned about affecting his practice because I don't think it will in any way, shape or form.

Appellants' Brief at 31. The passage, taken in context, was:

I don't have to tell you to keep in mind that a dispute between these parties is for them a most serious matter. They and the Court rely upon you to give full and conscientious deliberation and consideration to the issues and evi-

dence before you. You should not allow sympathy or prejudice to influence your deliberations. You should not be influenced by anything other than the law, and the evidence in the case. All the parties stand equally before the Court and each is entitled to the same fair and impartial treatment at your hand. On that subject, I'll just say quickly in passing, that remember now, Dr. Cluver while a Defendant here is not in any way punished by what you would do with a verdict if you do hold him responsible. He's simply being sued in a lawsuit, and don't—don't be concerned about affecting his practice because I don't think it will in any way, shape or form.

N.T. June 7, 1991 at 24. Moreover, after entertaining an objection and a motion for mistrial, the trial court provided the following qualification:

I made some reference to Dr. Cluver's own position with reference to this and I'd like to read a little bit more to you. The case does not involve punishment of the Defendants or even criticism of their services or his service beyond the facts of this matter. The claim does not involve the dentist's reputation, standing or licensure. So, no thoughts should be given to these irrelevant considerations in reaching a verdict.

*Id.* at 33–34.

The charge properly instructed the jurors to ignore the consequences of a finding against appellants and to concentrate on whether the appellants acted negligently and caused Mr. Bonavitacola's injuries and death. Any possible hint that appellants would be indemnified from an adverse ruling was removed by the thorough curative instruction. While we find no error, even if there were error, we certainly find no prejudice to appellants. Accordingly, appellants are not entitled to a new trial on this basis.

*Admission of Paula Bonavitacola's Statement Regarding Telephone Conversation Between Dr. Cluver and Decedent*

Appellants argue that the testimony of appellee Paula Bonavitacola regarding a telephone conversation between appel-

lant Dr. Cluver and decedent was inadmissible hearsay. Accordingly, they request a new trial. We cannot agree that a new trial is in order.

■■■■■ With regard to this issue, we also affirm on the basis of Judge Cronin's thorough and well-reasoned analysis. He explained:

At trial, plaintiff testified that the decedent told her he was going to place a call to the doctor for a renewal of his prescription for penicillin that he needed for the October first dental visit, and that he then walked out of the room to make his call. (N.T., June 3, 1991, 142–143). Further, she testified that she heard decedent on the phone saying "doctor, are you sure I don't need it?" (N.T. June 3, 1991 at 143). This was the only portion of the phone conversation that plaintiff overheard (N.T. June 3, 1991 at 143) before decedent returned to the room and said to plaintiff "Doctor Cluver will not renew the prescription for penicillin because he said that he was going to work on one tooth superficially, and I did not need it." (N.T., June 3, 1991 at 144).

Defendants contend that the statement should be stricken as hearsay because it directly impacted upon a material issue of fact. Defendants, on page 3 of their Brief in Support of Post Trial Motions, contend that this testimony regarding decedent's phone conversation with Dr. Cluver is the only evidence that Dr. Cluver failed to prescribe penicillin prior to the October 1, 1987 dental visit. This contention is without merit. Dr. Cluver's failure to prescribe penicillin is supported by the medical records of Lankenau Hospital which contain no reference to a penicillin prescription. Additionally, this was enhanced by the absence of any penicillin prescription noted upon the pharmacy's records. Moreover, Dr. Cluver could not remember whether he prescribed penicillin for decedent's October 1, 1987 dental visit, and he testified that the "PCN" designation on decedent's medical records, indicating that penicillin had been prescribed, was entered at a later date for "medical-legal" reasons. (N.T. June 3, 1991, at 116, 128). Thus, the telephone conversation

was not the only evidence of Dr. Cluver's negligence, as defendants allege, but in fact, merely corroborated other evidence of negligence.

The telephone conversation was properly admitted to corroborate other evidence of negligence because it was offered to prove only that the statement was made, not that it was true. *Backman [Bachman] v. Artinger,* 285 Pa.Super. 57, 63, 426 A.2d 702, 705 (1981); *Com. v. Samuels,* 235 Pa.Super. 192, 204, 340 A.2d 880, 886 (1975). Dr. Cluver was afforded and utilized ample opportunity at trial to refute the truth of the statement—whether or not decedent needed the penicillin. Thus, the conversation was admissible as non-hearsay.

Assuming arguendo, that the conversation is not admissible as non-hearsay, it is still admissible under the state of mind exception to the hearsay rule. It was not offered to prove the truth of the matter asserted, but was offered to reveal the decedent's state of mind at the time of the conversation. Hence, it was admissible for that purpose. *Nuttall v. Reading Co.,* 235 F.2d 546 (3d Cir.1956).

Additionally, the telephone conversation was admitted to refute defendants' assertion that decedent was contributorily negligent in failing to take penicillin as was his unwaivering practice in the past. As a result, the telephone conversation is admissible to reflect the declarant's state of mind and is an exception to the hearsay rule for this purpose too. *Com. v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986); *Com. v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980). It proves that the decedent subsequently acted in accordance with that state of mind and was not contributorily negligent by not taking penicillin. *Com. v. Marshall,* 287 Pa. 512, 135 A. 301 (1925) [1926]; *Com. v. Lowenberg,* 481 Pa. 244, 392 A.2d 1274 (1978); *Com. v. Reggins [Riggins],* 478 Pa. 222, 386 A.2d 520 (1978).

The telephone conversation is also admissible under an exception to the hearsay rule, in that the decedent immediately repeated to plaintiff the comments that Dr. Cluver made on the telephone. This provided decedent little or no

time to consciously manipulate the truth, qualifying the statement as a present sense impression. *United States v. Peacock,* 654 F.2d 339 (5th Cir.1981); *United States v. Earley,* 657 F.2d 195 (8th Cir.1982) [1981]; *United States v. Portsmouth Paving,* 694 F.2d 312 (4th Cir.1982). Furthermore, at that time, decedent would have [had] no motive to manipulate the conversation because he was not aware that Dr. Cluver's failure to prescribe penicillin was negligent. If it is defendants' assertion that plaintiff and not decedent manipulated the truth or facts of the conversation between decedent and Dr. Cluver, defendants had the opportunity at trial to test plaintiff's veracity through cross-examination, and in fact, took advantage of this opportunity. It is the jury's function to weigh the plaintiff's credibility, not this Court's in a post-trial determination.

Defendants also contend that the evidence of the telephone conversation between Dr. Cluver and the deceased should not have been admitted because Dr. Cluver's identity as a party to the conversation was not properly authenticated. Under Pennsylvania law, "a telephone conversation between a witness and another person is admissible only when the identity of the person with whom the witness was speaking is satisfactorily established." *Limestone Products & Supply Co. v. Tom Brown[,] Inc.,* 198 Pa.Super. 375, 181 A.2d 696 (1962), citing *Burton v. Pacific Mutual Life Insurance Co.,* 368 Pa. 613, 517, 84 A.2d 320 [310] (1951).

In the instant case, plaintiff authenticated the identity of Dr. Cluver through (1) the decedent's stated intent to make the call; (2) plaintiff's observation of the decedent making the call thereafter; (3) the portion of the telephone conversation that she overheard; (4) the decedent's statements to the plaintiff after making the call; (5) decedent's relationship with Dr. Cluver and his knowledge of Dr. Cluver's voice; (6) plaintiff's claim that decedent routinely called Dr. Cluver's office to obtain prescriptions for penicillin prior to treatment; and (7) decedent's actions subsequent to the telephone conversation that corroborated the substance of the conversation. In short, the circumstances surrounding

the telephone call provide enough basis to satisfactorily establish that Dr. Cluver was a party to the conversation. Circumstantial evidence such as this type is sufficient to authenticate a telephone call, especially in light of decedent's familiarity with Dr. Cluver's voice. *Limestone Products & Supply Co. v. Tom Brown[,] Inc.*, 198 Pa.Super. 375, 181 A.2d 696 (1962).

Trial Court Opinion, May 28, 1992 at 2–6.

### Excessiveness of Verdict

█ Appellant's final argument is that the jury verdict was so excessive as to require a new trial. Again, we disagree.

█ A jury is given wide latitude in fashioning its verdict on damages. *Phillips v. Schoenberger*, 369 Pa.Super. 52, 57, 534 A.2d 1075, 1077 (1987). Its verdict will not be reversed unless it is so excessive that it shocks the court's conscience. *Id. See also Freeman v. Maple Point, Inc.*, 393 Pa.Super. 427, 436, 574 A.2d 684, 689 (1990) (new trial may be granted "so that right may be given another opportunity to prevail"). Furthermore,

[t]he trial judge, who was present at the trial and heard the testimony, has broad discretion with respect to granting or refusing a new trial on the grounds that the verdict was contrary to the weight of the evidence; and his decision will not be reversed on appeal unless he has acted capriciously or has abused his discretion. *Yandrich v. Radic*, [291 Pa.Super. 75, 79, 435 A.2d 226, 229 (1981), *appeal dismissed*, 499 Pa. 271, 453 A.2d 304 (1982) ]. A new trial should not ordinarily be granted where the evidence is conflicting and the jury could have decided for either party. *Carroll v. Pittsburgh*, 368 Pa. 436, 445–446, 84 A.2d 505, 509 (1951).

*Schoenberger, supra*, 369 Pa.Super. at 57, 534 A.2d at 1077.

Review of the record reveals the following. The decedent would have entered a prosperous stage of his career. He had recently been appointed to the Marple Township Zoning Board. He also handled all of the legal affairs of a real estate broker. There was evidence that he spent almost all of his earnings on his family. The Wrongful Death award of $1,246,-

147.00 approximated the lowest estimate of damages suggested by an expert economist. Accordingly, this award is well-supported and not excessive.

Mrs. Bonavitacola testified that her husband and she had dated exclusively before they were married. He had provided her with emotional support and managed the family's finances. Mr. Bonavitacola also helped his wife with daily chores around the house. The $300,000 loss of consortium award is also well-supported by the evidence.

The $500,000 loss of parental guidance award finds support in the evidence regarding the decedent's devotion towards his two sons. The young children are now without their father's guidance, tutelage, and friendship.

With regard to Mr. Bonavitacola's conscious pain and suffering, the evidence showed that he had suffered adverse effects and had spent two weeks in hospital therapy. He was aware of his grave heart problems. He was very concerned about the future of his young children, should he die. This evidence supports the $750,000 award for conscious pain and suffering.

The award, overall, was based upon sufficient evidence; the jury's verdict was neither capricious nor excessive.

## CONCLUSION

We deny appellee's motion to quash. After careful consideration of appellants' arguments, we affirm the order of the trial court denying appellants' post-trial relief.

Motion to quash denied. Order affirmed.

CAVANAUGH, J., filed a dissenting opinion.

CAVANAUGH, Judge, dissenting:

Since I feel that the majority makes an egregious error in undermining historic precedent which is the bedrock of our system of appellate review, I vigorously dissent. The majority gratuitously reviews this clearly interlocutory appeal from post-verdict motions and establishes a precedent which, if followed, could wreak havoc with established canons of juris-

diction in our appellate courts. The appealing defendants have steadfastly refused to enter judgment citing what can only be described as counsel's self-proclaimed conflict of economic interests which counsel perceives to exist between the named defendants and their insurance carrier. Appellees, on the other hand, have refused to enter judgment for undisclosed reasons and seek instead a quashal with prejudice.

The majority has acted without precedent. Purported authority is said to be found in three cases which, in fact, stand for an entirely different proposition of law. In *McCormick v. Northeastern Bank of Pennsylvania,* 522 Pa. 251, 561 A.2d 328 (1989), the court regarded "as done that which ought to have been done" in order to perfect the record in a case where there was no controversy as to the entry of judgment. Similarly, in *Summit Fasteners v. Harleysville,* 410 Pa.Super. 56, 599 A.2d 203 (1991), the failure to enter judgment was not in controversy and our court engaged in the "ought to be done" fiction. Finally, in *Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647 (1991), our court chose to interpret a lower court opinion in a manner which met the standard of finality necessary to our jurisdiction. There is no suggestion that the entry of a properly worded order was a matter of contention between the parties.

Thus, there is no authority which would establish the right of an appellate court to entertain an interlocutory appeal in the face of the *refusal* for their own reasons of either party to enter a judgment. The majority recognizes the unprecedented nature of its consideration of the merits, but gratuitously undertakes its review on the basis of "judicial economy" to "efficiently dispose of an appeal". To the contrary, the majority's precedent, if allowed to stand, will invite confusion in our appellate courts and would furnish a precedent for consideration of interlocutory appeals whenever two judges on a panel consider that the appeal, despite its interlocutory nature, should conveniently be considered. Further, the majority rule supercedes Pa.R.A.P. 1311 Interlocutory Appeals by Permission since an interlocutory appeal may now be heard by a

panel without the approval of a majority of the commissioned judges of this court. See Superior Court I.O.P. 302.

The new and radical rule adopted by the majority will seriously affect other established rights and duties which flow from the final order—entry of judgment principle. For example, the time for taking an appeal (Pa.R.A.P. 903) will no longer be fixed from the date of entry of judgment when a panel entertains interlocutory appeals such as the present. Other substantive rights may be affected in bypassing the requirement of entry of judgment. These include collateral attacks on a judgment, merger and bar of causes of action and defenses; establishment of liens; calculation of post-judgment interest and issues relating to the conclusiveness of an adjudication. It is worthy of note that in the instant matter there are unresolved disputes between the parties as to the adequacy of the appeal bond, as to the responsibility of the insurance carrier for costs, as to Rule 238 damages and post-judgment interest—all of which militate against the majority's unwarranted assumption of jurisdiction.

Finally, we observe that as a result of the majority disposition there is as yet no entry of judgment in this case and presumably an appeal will be pursued to the supreme court with the consequent result that further time will thus elapse while this interlocutory appeal is considered without the appellants having a judgment entered against them.

Appellees request this court to quash with a sanction of prohibiting further pursuing an appeal at a later date. No authority for this severe sanction is furnished to us. Nor is there any explanation for the failure of appellees to enter judgment, a course available to them and certainly a necessary precedent to any effort to execute upon the verdict that they have won. Pa.R.C.P. 227.1; Pa.R.A.P. 301.

I would quash the appeal and deny the request for sanctions.