J-S26023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                       :   PENNSYLVANIA

                              Appellee   :

                                 v.   :

JERMAINE HENDERSON   :

                          Appellant   :   No. 2128 EDA 2018

Appeal from the Judgment of Sentence Entered March 27, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000761-2017

BEFORE:   PANELLA, P.J., GANTMAN, P.J.E., and PELLEGRINI*, J.

MEMORANDUM BY GANTMAN, P.J.E.:            **FILED JULY 18, 2019**

      Appellant, Jermaine Henderson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for first-degree murder, attempted murder, aggravated assault, possessing an instrument of crime, and carrying a firearm without a license.[1] We affirm.

      In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them. Procedurally, we add Appellant filed a timely notice of appeal on July 23, 2018. On July 25, 2018, the court ordered Appellant to file a

---

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), 2702(a), 907(a), and 6106(a)(1), respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

J-S26023-19

concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).

Appellant complied on September 18, 2018.[2]

Appellant raises the following issues for our review:

> WAS THE JURY'S VERDICT AGAINST THE WEIGHT OF THE EVIDENCE IN LIGHT OF THE MOTIVE OF WITNESS TAUFEEQ ZIYAD TO LIE AND THE OBVIOUS CONFLICTS IN THE TESTIMONY OF WITNESSES [VICTIM 2] AND STEPHANIE BRUNSON?
>
> DID THE [TRIAL] COURT ERR IN FINDING THAT A CD OF [APPELLANT]'S PRISON CALLS HAD BEEN PROPERLY AUTHENTICATED?

(Appellant's Brief at 3).

The following principles apply to a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

---

[2] Appellant's Rule 1925(b) statement was not timely filed. Nevertheless, we decline to waive Appellant's issues because the trial court received the statement and addressed Appellant's issues in a written opinion. *See* *Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super. 2009) (*en banc*) (allowing for immediate review under these circumstances).

- 2 -

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

"The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." ***Commonwealth v. Ballard***, 622 Pa. 177, 197-98, 80 A.3d 380, 392 (2013), *cert. denied*, 573 U.S. 940, 134 S.Ct. 2842, 189 L.Ed.2d 824 (2014).

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Goldman***, 70 A.3d 874, 878-79 (Pa.Super. 2013), *appeal denied*, 624 Pa. 672, 85 A.3d 482 (2014). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012), *appeal denied*, 619 Pa. 678, 62 A.3d 379 (2013).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glenn B. Bronson, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed October 16, 2018, at 3-8) (finding: **(1)** in his

police statement, Taufeeq Ziyad said he was with Appellant on day of shooting and heard Appellant and his associate make statements implicating Appellant in shooting of Victims; Mr. Ziyad also explained Appellant shot Victim 1 in retaliation for killing Appellant's friend, "Q-Ball"; Mr. Ziyad provided police statement while in custody for unrelated shooting, in which police recovered gun that Mr. Ziyad believed was same gun Appellant used to kill Victim 1; at Appellant's trial, Mr. Ziyad admitted he understood he could have been suspect in Victim 1's murder if it was same gun; Mr. Ziyad recanted his police statement at trial, but jury was free to believe all, part, or none of Mr. Ziyad's police statement and recantation; furthermore, Commonwealth presented evidence and testimony corroborating Mr. Ziyad's police statement; regarding alleged conflict in testimony of Victim 2 and Stephanie Brunson, Appellant does not specify how their testimony conflicted; nevertheless, Ms. Brunson's testimony did not contradict Victim 2's account; both Ms. Brunson and Victim 2 testified Victims were holding hands and facing Appellant when shooting began, and Victims ran to laundromat for cover; evidence fully supported jury's verdict; **(2)** in order to authenticate CD containing recording of Appellant's telephone call, Commonwealth presented testimony of John Wright, who was responsible for monitoring phones at prison where Appellant was incarcerated; Mr. Wright explained prison assigned each inmate unique pin number, which inmate must enter each time inmate places call; Mr. Wright confirmed phone call at issue was placed with Appellant's pin number; Mr.

Wright also confirmed disk containing recording was identified with Appellant's inmate number; furthermore, content of recorded phone call identified Appellant as caller).  Accordingly, we affirm based on the court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/18/19

**FILED**

IN THE COURT OF COMMON PLEAS 2018 OCT 16 PM 2: 36
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA RECORDS
CRIMINAL TRIAL DIVISION CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0000761-2017 |
| | : | |
| v. | : | CP-51-CR-0000761-2017 Comm. v. HENDERSON, JERMAINE Opinion |
| | : | |
| JERMAINE HENDERSON | : | ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ |
| | | 8176902441 |

OPINION

BRONSON, J.                                                October 16, 2018

On March 27, 2018, following a jury trial before this Court, defendant Jermaine

Henderson was convicted of one count each of murder of the first degree (18 Pa.C.S. § 2502(a))

(victim Derek White), attempted murder (18 Pa.C.S. §§ 901(a), 2502) (victim K.W.....),[1]

carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)), and possession of an instrument

of crime ("PIC") (18 Pa.C.S. § 907(a)). The Court immediately imposed the mandatory sentence

of life in prison for the murder charge (18 Pa.C.S. § 1102(a)(1)), with concurrent terms of 10 to

20 years imprisonment for attempted murder,[2] 3 ½ to 7 years imprisonment for carrying a

firearm without a license, and 1 to 5 years imprisonment for PIC, for an aggregate sentence of

life in prison. The sentence was to run consecutively to the mandatory life sentence defendant

was already serving for an unrelated murder conviction. Defendant filed post-sentence motions,

which the Court denied on July 12, 2018.

---

[1] Defendant was also convicted of the aggravated assault (18 Pa.C.S. § 2702(a)) of victim K.W. , but no sentence was entered on that charge due to merger with the attempted murder conviction.

[2] Defendant had previously been convicted of aggravated assault, graded as a felony of the first degree, in 2003, which qualified as a conviction of a prior crime of violence under 42 Pa.C.S. § 9714. N.T. 3/27/18 at 18-19. Accordingly, his attempted murder conviction in the instant case was a "second strike" and carried a mandatory sentence of 10 to 20 years incarceration.

Defendant has now appealed from the judgment of sentence entered by the Court on the grounds that: 1) the verdict was against the weight of the evidence; and 2) the Court erred in finding that a CD recording of defendant's prison calls had been properly authenticated. Defendant's Concise Statement of Errors Complained of on Appeal ("Statement of Errors") at ¶¶ 1-2. For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia police officers John Smith, Leslie Cain, and John Cannon, Philadelphia police detective Donald Marano, Philadelphia deputy chief medical examiner Dr. Albert Chu, Philadelphia deputy sheriff Martin Samuels, SCI Graterford captain David Mascellino, John Wright of SCI Graterford's Internal Security Department, and Michelle Gerald, K.W. , Taufeeq Ziyad, Ebony Cook, and Stephanie Brunson. Defendant presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On February 11, 2005, the victim, Derek White, was walking his daughter, K.W. home from her daycare located in the Wilson Park project in Philadelphia.[3] N.T. 3/22/18 at 17-19. As the pair was walking through the parking lot of K Laundromat, located at the intersection of 27th and Snyder Streets, a man behind them yelled White's nickname, Scooter. N.T. 3/22/18 at 19, 21-22; 3/26/18 at 17, 75. White and K.W. immediately turned around, and K.W. noticed that her father grew panicked. N.T. 3/22/18 at 19, 28. Suddenly, multiple shots were fired in their direction. N.T. 3/22/18 at 19. While White was hit by a bullet, he managed to pick up his daughter in order to run for cover in the laundromat. N.T. 3/22/18 at 20, 23; 3/26/18 at 35. Once

---

[3] K.W. Child victim will be referred to throughout this Opinion as

2

inside the laundromat, White collapsed to the floor, and a bystander assisted K.W. N.T. 3/22/18 at 24; 33.

Philadelphia police officers responded to the scene upon the report of a shot male. N.T. 3/20/18 at 105. When they arrived, they discovered that K.W. had also gotten shot, and therefore, transported her in a police wagon to Children's Hospital of Philadelphia, where she was treated for a gunshot wound to the foot. N.T. 3/22/18 at 12; 3/26/18 at 127. Paramedics ultimately transported White to the Hospital of the University of Pennsylvania, where he was pronounced dead. N.T. 3/20/18 at 90, 106. The medical examiner determined that White's cause of death was a single gunshot wound to the left buttock. N.T. 3/20/18 at 91.

Philadelphia police officers and detectives then conducted an investigation of the shooting. N.T. 3/20/18 at 104-33; 3/22/18 at 159-80; 3/23/18 at 20-51. During the course of their investigation, Stephanie Brunson positively identified defendant as the shooter. N.T. 3/26/18 at 51; Commonwealth Exhibit C-30 (Stephanie Brunson's police statement). Additionally, Taufeeq Ziyad informed police that defendant confessed to him that he committed the shooting, while Ebony Smith reported to police that approximately three days after the shooting, she overheard defendant telling someone that he "finally got that motherfucker." N.T. 3/22/18 at 75-76; 3/23/18 at 74.

## II. DISCUSSION

### A. *Weight of the Evidence*

Defendant first claims that his conviction was against the weight of the evidence, "in light of the motive of witness Tafiq [sic] Ziyad to lie and the obvious conflicts in the testimony of witnesses K.W. and Stephanie Brunson." Statement of Errors at ¶ 1. This claim is without merit.

3

It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "'shock one's sense of justice.'" *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *appeal denied*, 878 A.2d 864 (Pa. 2005) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555) (Pa. Super. 1989)). Moreover, credibility determinations are solely within the province of the fact-finder, and "[a]n appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013) (internal quotation omitted). In considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

Here, defendant offers two specific arguments in support of his weight of the evidence claim. Defendant first avers that witness Taufeeq Ziyad had a motive to lie. Statement of Errors at ¶ 1. At trial, the Commonwealth presented Ziyad's police statement, in which he told police that on the day of the shooting, he and defendant were hanging out with some friends at a home on Bailey Terrace.[4] N.T. 3/22/18 at 75. Eventually, defendant and one of the friends, Rasheed, left the home; however, defendant soon reentered and told the group, "I seen him." *Id.* He then grabbed a chrome revolver from underneath the couch and left. *Id.* A few minutes later, he returned and said, "I got him." *Id.* Rasheed also returned and told defendant, "I think you killed that little girl." *Id.* After hearing that, defendant planned to turn himself in. *Id.* He changed his mind, however, once he received word that the little girl had only gotten shot in the foot. N.T. 3/22/18 at 75-76. Moreover, Ziyad explained to police that defendant shot White in retaliation for White killing defendant's close friend, "Q-ball", one year prior. N.T. 3/22/18 at 101-02.

---

[4] Ziyad's statement was admissible for its truth as a prior inconsistent statement that was signed and adopted by the declarant. See Pa.R.E. 803.1(1)(b).

4

It is true that Ziyad gave his statement to police while he was in custody for an unrelated shooting. It is also true that in that unrelated shooting, police had recovered a gun that Ziyad believed was the same gun that defendant used to kill White.[5] N.T. 3/22/18 at 146-47, 164. At trial, Ziyad admitted that he understood that he could have been a suspect in White's murder if that gun was indeed determined to be the gun used in White's murder. N.T. 3/22/18 at 148. However, at trial, Ziyad recanted his police statement that incriminated defendant and instead claimed that police forced him to say "everything." N.T. 3/22/18 at 74. Nevertheless, the jury was free to evaluate both Ziyad's statement as well as his testimony at trial recanting the statement, and was "free to believe all, part, or none of the evidence." *Commonwealth v. Hanible*, 836 A.2d 36, 39 (Pa. 2003).

Moreover, the Commonwealth presented additional evidence that strongly corroborated Ziyad's police statement. Stephanie Brunson testified that at the time of the shooting, she was walking through the laundromat's parking lot when she saw defendant fire multiple shots at White and K.W. , and then witnessed defendant run by her and towards the projects. N.T. 3/26/18 at 23-24, 40. She also testified that as defendant fled the scene, she saw him hand over the murder weapon to another male. N.T. 3/26/18 at 40. In addition, the Commonwealth presented Ebony Cook's police statement, in which she recounted hearing defendant tell someone a few days after the shooting that he "finally got that motherfucker." N.T. 3/23/18 at 74. Cook also told police that defendant shot White because defendant "was a friend of Q-Ball's." N.T. 3/23/18 at 79. While like Ziyad, Cook recanted her police statement, the jury was again free to evaluate both Cook's police statement and her recantation. *Hanible*, 836 A.2d at

---

[5] Police did recover two firearms, a 9 mm Rugar handgun and a 9 mm Star handgun, on the date of Ziyad's arrest, which were cross-checked with the ballistics from the murder. N.T. 3/23/18 at 41-43, 45. While police were able to conclude to a reasonable degree of scientific certainty that the Rugar handgun was not the murder weapon, the results were inconclusive as to the Star handgun. N.T. 3/23/18 at 41-43.

5

39. Moreover, such recantations are "notoriously unreliable." *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa. 2009) (internal quotations omitted).

Defendant next claims that the verdict was against the weight of the evidence due to "the obvious conflicts in the testimony of witnesses ¡ K.W. ; and Stephanie Brunson." Statement of Errors at ¶ 1. While defendant does not specify how K.W. and Brunson's testimonies conflicted, at trial during closing arguments, trial counsel argued that eyewitness Brunson's testimony and identification of defendant were not credible because K.W. testified that she and her father turned around to face the shooter after the shooter yelled White's nickname, "which was "[e]xactly the opposite of what Stephanie Brunson describe[d]..." N.T. 3/26/18 at 152.

At trial, K.W. testified that she and her father were walking through the parking lot of the laundromat when they heard someone behind them yell White's nickname, causing them to turn around, where they were immediately fired upon. N.T. 3/22/18 at 19. Contrary to trial counsel's assertion during closing arguments, Brunson's testimony did not contradict K.W.'s account, as Brunson also testified that K.W. and White were facing the shooter when the shots began. N.T. 3/26/18 at 18, 28, 31-32. Moreover, both witnesses recalled that K.W. and White were holding hands when the shooting began, and that the pair ran to the laundromat for cover. N.T. 3/22/18 at 20-21; 3/26/18 at 18.

In addition, as discussed above, the Commonwealth also presented Ziyad's and Cook's police statements which corroborated Brunson's testimony and identification of defendant. Moreover, police recovered seven fired cartridge casings from the scene of the shooting and determined that they were all fired from the same firearm, corroborating Brunson's account that there was single shooter. N.T. 3/23/18 at 37; 3/26/18 at 18. All of this was compelling evidence

6

that fully supported the jury's verdict. For that reason, the Court did not abuse its discretion in denying defendant's motion for a new trial.

### B. Authentication of CD Containing Defendant's Prison Call

Defendant next claims that the Court "erred in finding that a CD of defendant's prison calls had been properly authenticated." Statement of Errors at ¶ 2. This claim is without merit.

Under Rule 901 of the Pennsylvania Rules of Evidence, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Specifically, "[i]t is clear… that when seeking to introduce testimony as to the content of a telephone conversation, the identity of the caller may be established by circumstantial evidence." *Commonwealth v. Stewart*, 450 A.2d 732, 733 (Pa. Super. 1982). Such circumstantial evidence may include the content of the telephone conversation itself. Pa.R.E. 901, Comment (citing *Bonavitacola v. Cluver*, 619 A.2d 1363 (Pa. Super. 1993)).

The CD here at issue was a recording of a telephone call placed by defendant from state prison while awaiting trial in the instant case. To authenticate the recording, the Commonwealth presented the testimony of John Wright, who was responsible for monitoring the phones at SCI Graterford, the institution where defendant was housed at the time of the phone call. N.T. 3/26/18 at 102-04. Wright explained that for an inmate to be able to make a phone call, the inmate is first assigned a unique pin number, which must be entered each time a call is placed. N.T. 3/26/18 at 104, 112. That pin number is uniquely associated with the inmate's prison inmate number. N.T. 3/26/18 at 112. Regarding the recording at issue, Wright confirmed that the phone call was placed from defendant's pin number. N.T. 3/26/18 at 114-15. Finally,

7

Wright confirmed that the disk containing the recording was identified by defendant's inmate number, NF0417. N.T. 3/26/18 at 117.

Defendant's identity was not only established through the above described pin system, but also through the content of the recorded phone call itself. The phone call occurred on March 8, 2018, and the caller told the recipient on the line, "I start next Monday...Ready to go, you heard me?" Commonwealth Exhibit C-55 (recording of prison call). Defendant's trial did indeed start that next Monday, March 19, 2018. Moreover, the caller discussed a "rat" who was housed on the same block as defendant and expressed his hope that "they put him on." *Id.* The Commonwealth presented the testimony of Captain David Mascellino of SCI Graterford, who confirmed that defendant and Commonwealth witness Taufeeq Ziyad were both housed on the Delta block at Graterford during that period. N.T. 3/26/18 at 91-94. All of this was sufficient evidence under Pa.R.E. 901 for the Court to allow the CD to be played for the jury.

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

8

Commonwealth v. Jermaine Henderson                    CP-51-CR-0000761-2017
Type of Order: 1925(a) Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

James F. Berardinelli, Esquire
1600 Locust Street
Philadelphia, PA 19102

Type of Service:        ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney:**

Lawrence Goode, Esquire
Interim Supervisor, Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service        ( ) Personal ( ) First Class Mail (**X**) Other, please specify: *Interoffice*

**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary – Superior Court
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:        ( ) Personal ( ) First Class Mail ( ) Other, please specify:

**Dated: October 16, 2018**

Kaitlin D. Shire
Law Clerk to Hon. Glenn B. Bronson