Accordingly, the order of the Superior Court is affirmed.

COMMONWEALTH of Pennsylvania, Respondent

v.

Richard Joseph COSNEK, Petitioner.

Supreme Court of Pennsylvania.

April 25, 2002.

### ORDER

PER CURIAM.

**AND NOW,** this 25th day of April, 2002, the Petition for Allowance of Appeal is hereby granted, limited to the following issue:

Can the Commonwealth certify an interlocutory appeal from a pretrial ruling that denied its motion in limine to exclude certain defense evidence?

Daniel FANNING

v.

Sanford DAVNE, M.D., Donald Myers, M.D. and Thomas Jefferson University Hospital

**Appeal of Sanford Davne, M.D.**

Superior Court of Pennsylvania.

Argued Nov. 29, 2001.

Filed Feb. 22, 2002.

Reargument Denied April 30, 2002.

Mary G. Walsh, Blue Bell, for appellant.

Michael D. Fishbein, Philadelphia, for Fanning.

Before JOHNSON, JOYCE and BECK, JJ.

## OPINION BY JOYCE, J.

¶ 1 Sanford Davne, M.D. (Appellant), appeals from the July 13, 1999 orders that denied his motions for post-trial relief and granted Daniel Fanning's (Appellee) petition for delay damages following a jury verdict in favor of Appellee. For the reasons set forth below, we affirm. The relevant facts and procedural history of this case are as follows.

¶ 2 On October 7, 1987, Appellee, who was working as an electrician for Carr Electric, injured his back while standing on a scaffold that moved suddenly. Appellee sought medical treatment and underwent spinal decompression and fusion surgeries in 1988 and 1989, but he still suffered back and leg pain. In July of 1990, Appellee was referred to Appellant, who specialized in spinal surgeries. In July of 1990, Appellant performed spinal decompression surgery on Appellee.

¶ 3 In January of 1991, Appellee continued to have pain, and sought further treatment with Appellant. Appellant performed spinal fusion surgery on Appellee, during which he implanted pedicle plates and screws.[1]

¶ 4 Appellee, however, continued to endure back and leg pain, and Appellant and Appellee discussed further treatment options. These options included: removal of the plates and screws with implantation of new plates and screws; an interbody fusion; an anterior fusion; or the implantation of a bone growth stimulator. Appellee testified he informed Appellant of his desire to have the pedicle screws and plates removed, feeling that they were the source of the increased pain.

¶ 5 Appellee testified that it was his understanding and desire that no plates or screws be implanted after the removal of the plates and screws already in his spine. N.T. Trial, 03/08/1999, at 107. Prior to the 1993 surgery, Appellant discussed consent-to-surgery forms with Appellee. Appellee questioned the language in the consent forms that referenced implanting plates and screws. Appellee testified that Appellant assured him the only implantation that would be considered was a bone growth stimulator. N.T. Trial, 03/08/1999, at 112. However, it was Appellee's understanding that there would be two surgeries; one to remove the plates and screws,

---

1. The pedicle plates and screws were manu- factured by AcroMed Corporation.

and if necessary, a subsequent surgery to perform an interbody fusion and implant a bone growth stimulator.

¶ 6 Appellant thereafter performed surgery on Appellee in April of 1993. Appellee was subsequently informed that Appellant had in fact implanted new screws and plates into Appellee's spine. Appellee testified that this procedure was performed without his consent. N.T. Trial, 03/08/1999, at 114.[2]

¶ 7 Appellee initiated the instant medical malpractice action by writ of summons on September 22, 1994. In Appellee's complaint, filed June 23, 1995, Appellee alleged Appellant was negligent in his decision to perform the spinal fusion surgery and implant the screws and plates, in addition to proceeding with a surgical procedure without Appellee's informed consent. The case proceeded to a jury trial March 8, 1999, before the Honorable Gary S. Glazer. The trial was held over five days, from March 8, 1999 to March 12, 1999. At the close of the proceedings, the jury returned a verdict in favor of Appellee in the amount of $100,000.00.[3]

¶ 8 Appellant filed post-trial motions, and Appellees petitioned for delay damages. In an order filed July 13, 1999, the trial court granted Appellee's petition for delay damages adding $32,477.00 to the $100,000.00 for a total verdict of $132,477.00; this order was filed concurrently with the trial court's July 13, 1999 order that denied Appellant's post-trial

motions and ordered the entry of judgment in favor of Appellee.[4] Thereafter, Appellant timely filed the instant appeal.

¶ 9 At the outset, this Court must determine if we have jurisdiction over the instant appeal. "Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). An appeal from an order denying post-trial motions is interlocutory. *Id.;* Pa.R.A.P. 301(a), (c), and (d). An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions. *Id.*

¶ 10 However, in *Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363 (1993), a panel of this Court allowed an appeal to proceed, despite the fact that there was no judgment entered, in the interests of judicial economy. The reasoning behind this decision was that if the order from which an appeal is taken "was clearly intended to be a final pronouncement on the matters discussed in the opinion [accompanying the order], ... the appeal is properly before us and ... we have jurisdiction to address the parties' claims." *Bonavitacola, supra* (quoting *Murphy v. Murphy*, 410 Pa.Super. 146, 599 A.2d 647, 650 (1991), *appeal denied*, 530 Pa. 633, 606 A.2d 902 (1992)).

**2.** Appellee subsequently consulted another surgeon who removed the plates and screws. Appellee testified that since the removal of the plates and screws his quality of life has improved. N.T. Trial, 03/08/1999, at 125.

**3.** Appellant was covered under a professional liability insurance policy with Physicians Insurance Company at the time of the 1993 surgery. Because Physicians Insurance Company became insolvent, Pennsylvania Property and Casualty Guaranty Insurance Associa-

tion (PPCGIA) became guarantor of the claim made against the insolvent insurer pursuant to 40 P.S. §§ 991.1801—991.1820. It should be noted however that PPCGIA does not assume all obligations of an insolvent insurer. *See* 40 P.S. § 991.1808.

**4.** Despite the language of the order, our review of the record reveals that judgment was not entered in this case.

¶ 11 As our Court explained in *Bonavitacola*, "[t]he rationale behind treating this appeal as one from an entered judgment is to allow the appeal which is in progress to proceed, economizing judicial resources. Were we to quash an appeal from an order which, except for the entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow." *Id.* at 1367 (internal citations and quotation marks omitted).

■ ¶ 12 Nevertheless, "the law of this Commonwealth has long recognized that the entry of judgment is a jurisdictional matter. The requirement that judgment be docketed is jurisdictional. Moreover, the entry of judgment is a prerequisite to our exercise of jurisdiction. On the other hand there are some instances wherein a party has failed to enter judgment and our appellate courts may regard as done that which ought to have been done." *Johnston, supra* at 514–515 (internal citations and quotation marks omitted). Pursuant to *Johnston, supra,* we will consider this appeal as being properly before our Court.

¶ 13 Appellant presents the following issues for our consideration:

WHETHER JUDGMENT NOTWITHSTANDING THE VERDICT SHOULD HAVE BEEN ENTERED ON THE INFORMED CONSENT ISSUE BECAUSE THE EVIDENCE DEMONSTRATED THAT [APPELLEE] SIGNED A CONSENT FORM WHICH AUTHORIZED THE USE OF PEDICLE PLATES AND SCREWS AND THE VERDICT WAS CLEARLY AGAINST THE WEIGHT OF THE EVIDENCE?

WHETHER THE TRIAL COURT ERRED BY PERMITTING [APPELLEE] TO CROSS EXAMINE [APPELLANT] CONCERNING A FINANCIAL INTEREST IN ACROMED CORPORATION WHEN SUCH TESTIMONY WAS NOT PROPER IMPEACHMENT, WAS HIGHLY PREJUDICIAL, AND WAS IN VIOLATION OF A COURT ORDER ISSUED BY THE HONORABLE LOUIS C. BECHTLE?

WHETHER THE JURY VERDICT SHOULD HAVE BEEN MOLDED TO ZERO ($0.00) WHEN THE PLAIN LANGUAGE OF THE PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ACT, 40 P.S. § 991.1801 *ET. SEQ.,* AND CASE LAW INTERPRETING THAT ACT, CLEARLY STATE THAT [APPELLEE'S] AWARD MUST BE OFFSET BY PAYMENTS RECEIVED FROM OTHER INSURANCE THAT SOUGHT TO PROTECT [APPELLEE] AGAINST THE SAME RISK AS WAS COVERED BY THE INSOLVENT INSURER?

Brief for the Appellant, at 4.[5]

■ ¶ 14 We will first address Appellant's issue regarding the denial of his motion for judgment notwithstanding the verdict (JNOV). "When reviewing a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact. Any conflict in the evidence must be resolved in the verdict winner's favor." *Kiker v. Pennsylvania Financial Responsibility Assigned Claims Plan,* 742 A.2d 1082, 1084 (Pa.Super.1999) (internal citations omitted). There are two bases upon which JNOV

---

5. For ease of discussion, we will address Appellant's issues in reverse order from the manner in which they were presented in the brief.

can be entered: one, "the movant is entitled to a judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Id.* at 1085. We will reverse the trial court only upon a finding of an abuse of discretion or error of law that controlled the outcome of the case. *Id.*

¶ 15 As noted above, a party moving for JNOV (i.e., challenging the sufficiency of the evidence) avers that the evidence and all inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, is insufficient to sustain the verdict. *See Kiker, supra.* However, the argument portion of Appellant's brief, while correctly stating the standard for granting a JNOV, never develops any argument on this point. Instead, Appellant focuses his argument toward the assertion that the verdict was against the weight of the evidence and requires a new trial. Consequently, Appellant's claim that the lower court erred in denying his motion for JNOV is waived for failing to develop any argument. *See B & L Asphalt Industries, Inc. v. Fusco,* 753 A.2d 264 (Pa.Super.2000) (failure to properly develop argument in appellate brief constitutes waiver). Therefore, we will proceed with an analysis of Appellant's weight of the evidence claim and demand for a new trial.

 It is well settled that the grant of a new trial is a matter within the discretion of the trial court. *Martin v. Evans,* 551 Pa. 496, 501–502, 711 A.2d 458, 461 (1998). "A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice." *Cangemi ex rel. Estate of Cangemi v. Cone,* 774 A.2d 1262, 1265 (Pa.Super.2001). "An appellant is not entitled to a new trial where the evidence is

conflicting and the finder of fact could have decided either way." *Id.* Our standard of review of the denial of a motion for a new trial is not different from the grant of a new trial. *Livelsberger v. Kreider,* 743 A.2d 494 (Pa.Super.1999). Our standard of review of an order denying a motion for a new trial is to decide whether the trial court committed an error of law that controlled the outcome of the case or committed an abuse of discretion. *Cangemi, supra.*

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Paden v. Baker Concrete Construction Co., Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995) (citations and quotation marks omitted).

 ¶ 16 Appellant bases his demand for a new trial on a "weight of the evidence" argument. This Court has recognized that a weight of the evidence challenge concedes that there was evidence sufficient to sustain the verdict, but the verdict was against the weight of the evidence. *Armbruster v. Horowitz,* 744 A.2d 285, 286 (Pa.Super.1999). We may not substitute our judgment for that of the trial court, we must only decide whether the trial court abused its discretion. *Id.* Credibility issues are determined by the jury, and this Court rarely overturns the

factual findings of a jury that are based on determinations of credibility, because we are confined to review a cold record. *Id.; see also, Commonwealth v. Burns*, 765 A.2d 1144 (Pa.Super.2000). With these principles in mind, we find no abuse of discretion in the trial court's denial of Appellant's motion for a new trial.

¶ 17 In this case there was extensive testimony and numerous exhibits. The testimony of the witnesses conflicted as to a central issue on this appeal: did Appellee give his informed consent for the 1993 surgery? Introduced at trial were the consent forms signed by Appellee, which Appellant claimed were thoroughly explained. N.T. Trial, 03/10/1999 at 167–176. However, Appellee's testimony revealed that he never consented to implantation of plates and screws at the 1993 surgery. N.T. Trial, 03/08/1999 at 115, 193–209.

¶ 18 In order for the jury to reach a determination as to whether or not Appellee gave his informed consent to the 1993 surgery, they had to sift through this conflicting testimony. Where the parties present conflicting testimony, there is a credibility issue to be determined by the jury. *Martin, supra.*

¶ 19 The evidence in this matter predominantly consisted of the testimony of witnesses, and the weight of that evidence rested on determinations of credibility. As we are a court of review, we will not disturb factual findings based upon determinations of credibility. *Armbruster, supra.* Therefore, because the trial court's conclusions were based on the jury's determinations of credibility, and because we find the trial court's decision was not so contrary to the evidence as to shock one's sense of justice, we will not disturb the trial court's decision. With respect to this issue, we find clear support in the record and further find no abuse of discretion.

¶ 20 Appellant next avers that during cross-examination of Appellant, counsel for Appellee was improperly permitted to suggest Appellant had a financial interest in AcroMed Corporation, causing him to utilize these devices in order to achieve personal financial gain. Appellant claims this was prejudicial and violated an earlier court order issued by Judge Louis C. Bechtle. Conversely, Appellee argues that the evidence regarding Appellant's financial interest in AcroMed was in no way precluded by Judge Bechtle's order. Since both parties claim Judge Bechtle's order is dispositive, we will look to the order itself.

¶ 21 The relevant portion of Judge Bechtle's order is reproduced verbatim below:

6. All Settlement Class Members who are AcroMed Orthopedic Bone Screw Recipients (or whose claims rest on the implantation of AcroMed Orthopedic Bone Screws) are permanently BARRED and ENJOINED from initiating, asserting, or prosecuting any actions presenting Settled Claims against any party. Settlement Class Members who are AcroMed Orthopedic Bone Screw Recipients (or whose claims rest on the implantation of AcroMed Orthopedic Bone Screws) may not initiate, assert, or prosecute Orthopedic Bone Screw related claims, unless:

(a) the claim is in the nature of a claim for alleged independent medical malpractice against any physician who treated the Settlement Class Member or any institution at which the Settlement Class Member was treated based upon medical care rendered to the Settlement Class Member; and

(b) the claim does not (I)[sic] rest in whole or in part on any product liability-related theory of recovery, including without limitation design or manufactur-

ing defect, the regulatory status of any AcroMed Orthopedic Bone Screw, or alleged failure to warn, nondisclosure, or inaccurate or incomplete disclosure, of the regulatory status of any AcroMed Orthopedic Bone Screw or (ii) have as an element of the claim financial relationships with AcroMed and/or an alleged conflict of interest based upon any such financial relationship (impeachment shall not be considered an element of a claim).

*In re Orthopedic Bone Screw Products Liability Litigation,* 176 F.R.D. 158, 186 (E.D.Pa.1997).[6]

¶ 22 We agree with Appellee. Judge Bechtle's order was not violated by the trial court permitting cross-examination regarding Appellant's financial interest in AcroMed. First, the order does not in any form prohibit the offering of evidence; it prohibits certain claims. Second, the language clearly permits claims of medical malpractice and lack of informed consent, which are the issues in the instant case. Next, the order only prohibits the assertion of claims that have as an essential element a financial relationship between the physician and AcroMed. However, this case is a medical malpractice and lack of informed consent action that does not require proof of a financial interest as an essential element. *See Rauch v. Mike–Mayer,* 783 A.2d 815, 824 (Pa.Super.2001) (stating the essential elements required to prove medical malpractice); and *see Bey v. Sacks,* 789 A.2d 232, 2001 WL 1602971 (Pa.Super. December 14, 2001) (holding that in Pennsylvania, lack of informed consent claims utilize a battery standard; that is, a physician commits battery where the patient does not consent to the procedure on his person, thus constituting a harmful or offensive contact).

¶ 23 As stated above, questions referring to Appellant's financial interest in AcroMed were specifically contemplated and permitted by Judge Bechtle's order. In the instant case, the trial court permitted Appellee to refer to Appellant's financial interest on cross-examination only, limited to impeachment and motive. N.T. Trial, 03/08/1999, at 2–12.

¶ 24 Appellant argues it was error for the trial court to allow reference to his stock options and further claims that Appellee's cross-examination was improper impeachment because: "the evidence of [Appellant's] financial interest in AcroMed was offered not to establish that [Appellant] testified falsely, but to suggest a financial motive for the surgery." Brief for Appellant, at 29. Appellant's argument is flawed.

¶ 25 Appellee cross-examined Appellant with respect to his position on the AcroMed advisory panel and his stock options in Acromed. Appellant was asked on cross-examination if the stock options would become more valuable if more AcroMed pedicle plate and screw devices were sold and implanted. N.T. 03/11/1999 at 39. Appellee also inquired as to Appellant's exclusive use of the AcroMed devices. *Id.* 21. Appellant objected and Judge Glazer allowed the questioning on this subject for the limited purpose of impeachment, as it was relevant to show Appellant had a motive to implant AcroMed devices. *Id.* at 45.

¶ 26 Appellant claims that Appellees use of this line of questioning regarding his financial interest in AcroMed as evidence of motive is an essential element of medical malpractice and lack of informed consent, thus violative of Judge Bechtle's order. Brief for Appellant, at 31. We cannot agree because financial interest

---

6. It is undisputed this order applies to Appellee as he is a class member.

and motive are not elements of either medical malpractice (negligence) or lack of informed consent (battery) claims. See *Rauch*, supra and *Bey*, supra. Again, this line of questioning did not violate Judge Bechtle's order. Furthermore, "[q]uestions [concerning] the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant." *Moran v. G. & W.H. Corson, Inc.*, 402 Pa.Super. 101, 586 A.2d 416, 428 (1991) (*en banc*), *appeal denied*, 529 Pa. 650, 602 A.2d 860 (1992) (citations and quotation marks omitted). Evidence is relevant if it logically tends to establish a material fact in the case, makes the fact at issue more or less probable, or supports a reasonable inference or presumption about the existence of a material fact. *Kraus v. Taylor*, 710 A.2d 1142, 1143 (Pa.Super.1998).

¶ 27 In the case at bar, the cross examination and resultant answers tended to disprove Appellant's assertion that the plates and screws were medically indicated following informed consent (N.T. Trial, 03/09/1999, at 173; and 13/10/1999, at 166–180). Instead, Appellee showed that Appellant's financial interest in promoting the use of the AcroMed devices was his motivation for implantation. Therefore, the subject matter was relevant, and the cross necessary for impeachment.[7]

¶ 28 Appellant's final question for our consideration presents an issue concerning the Pennsylvania Property and Casualty Insurance Guaranty Association (PPCIGA) (40 P.S. §§ 991.1801–991.1820.) and the non-duplication of recovery provisions of § 991.1817. Specifically, Appellant claims that the verdict should be molded to zero to reflect an offset of the monies paid-out on Appellee's behalf through other insurance protecting Appellee from the same risk.

¶ 29 The non-duplication of recovery provision reads:

> [a]ny person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under any kind of insurance, whether it is a first-party or third-party claim, and shall include, without limitation, accident and health insurance, worker's compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under other insurance.

40 P.S. § 991.1817(b). PPICGA's limit of liability is $300,000.00 per claimant for covered claims. *See* 40 P.S. § 991.1803(b)(1)(i)(B). It is Appellant's position the jury award of $100,000.00 should be offset by the amount already received by Appellee, and the award molded to zero. It is undisputed that Appellee received more than $300,000.00 from his employer's Workers' Compensation carrier. It is also undisputed that the amounts paid out on behalf of Appellee were for lost wages and medical bills.

---

7. The trial court noted that Judge Victor DiNubile's ruling in *Schultheis v. Sanford H. Davne, et al.*, 35 Phil. Co. Rptr. 546, Philadelphia County Court of Common Pleas, February Term 1993, at No. 1851, clearly permitted the evidence of Appellant's financial interest in AcroMed. N.T. Trial, 03/08/1999, at 7. The trial court in the instant case stated Judge DiNubile is a judge of coordinate jurisdiction and his determination would not be overruled. *Id.* Furthermore, the *Schultheis* decision was affirmed ... by our Court in *Schultheis v. Davne*, 742 A.2d 1160 (Pa.Super.1999) (unpublished memorandum).

¶ 30 Both parties cite *McCarthy v. Bainbridge, M.D.,* 739 A.2d 200 (Pa.Super.1999), *aff'd,* 565 Pa. 464, 774 A.2d 1246 (2001), as support for their respective positions regarding the non-duplication of recovery provision of 40 P.S. § 991.1817. In *McCarthy,* the plaintiff (the McCarthys) initiated a suit for medical malpractice in the death of David McCarthy. *Id.* at 201. The parties reached a negotiated settlement in the amount of $950,000.00; $750,000.00 to be paid by Medical Professional Liability Catastrophe Fund, which is not in dispute, and $200,000.00 to be paid by the defendant physician's professional liability insurer. *Id.* PPCIGA was triggered to act due to the insolvency of the defendant physician's insurer. *Id.* PPCIGA refused to honor the McCarthy's claim of $200,000.00 since the decedent had a life insurance policy providing a benefit of $584,216.84 that had already been paid to the McCarthys. *Id.* PPCIGA's position was that under the non-duplication of recovery provision of 40 P.S. § 991.1817, the $200,000.00 claim against PPCIGA was entirely offset by the life insurance proceeds the McCarthys had received. *Id.* Therefore, PPCIGA contended that it was not required to make any contribution toward payment of the negotiated settlement. *Id.*

¶ 31 In resolving *McCarthy,* this Court interpreted the language of § 991.1817 and held the only reasonable reading was to require that the claim to be offset must be for the same loss as the claim asserted against the insolvent insurer. *Id.* at 203. We further held that life insurance and casualty insurance protected against different risks and losses. *Id.*

¶ 32 This reasoning supports Appellee's position. The damages awarded to Appellee in the instant case were for pain and suffering, not for the medical bills or wage loss, which were concededly covered by other insurance. *See* Brief for Appellant,

at 26, and *see* Brief for Appellee, at 23. No other insurance covered the loss for which Appellee sought compensation: the increased pain and suffering due to Appellant's actions. Therefore the non-duplication provision does not apply. *See generally McCarthy, supra.* The jury's award was for the pain and suffering claim that Appellee established; it was not for medical bills or lost wages.

¶ 33 For all of the reasons stated above, we find no error in the trial court's denial of Appellant's motion for JNOV or a new trial, we find no error in the trial court admitting questions and testimony regarding Appellant's financial interest in AcroMed, and we find that the non-duplication provision of 40 P.S. § 991.1817 is not applicable to the instant case. Therefore, the July 13, 1999 orders of the trial court, which denied Appellant's post-trial motions, granted Appellee's petition for delay damages, and directed the entry of judgment, are affirmed.

¶ 34 Orders affirmed.