J-A17007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MANUEL J. BURGOS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MORGAN, LEWIS & BOCKIUS, LLP, PHILABUNDANCE, CHAUNDRA LOESCH, WILLIAM J. CLARK AND MELANIE S. JUMONVILLE | |
| APPEAL OF: PHILABUNDANCE, CHAUNDRA LOESCH, WILLIAM J. CLARK AND MELANIE S. JUMONVILLE | No. 735 EDA 2015 |

Appeal from the Judgment Entered March 2, 2015
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: Consolidated with No. 110600726
December Term, 2012, No. 02978

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 05, 2017**

Appellants, Philabundance, Chaundra Loesch, William J. Clark, and Melanie S. Jumonville, appeal from the judgment entered March 2, 2015, following a jury verdict in favor of Appellee, Manuel J. Burgos, and against Appellants in this malicious prosecution case.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purport to appeal from the order denying their motion for post-trial relief.  "However, appeals are not properly taken from orders denying post-trial motions or exceptions."  ***Growall v. Maietta***, 931 A.2d 667, 669 n.1 (Pa. Super. 2007), *appeal denied*, 951 A.2d 1164 (Pa. 2008) (citations omitted).  Thus, we consider Appellants' appeal to be from the judgment entered March 2, 2015.

We take the factual and procedural history of this case from the trial court's opinion and our independent review of the certified record.[2] Appellee was hired as a truck driver for Philabundance in 2010. When he arrived at work each day, he received a delivery manifest that assigned him to a particular truck for deliveries. (*See* N.T. Trial, 11/05/14 (morning), at 42-43). He was never assigned to one particular truck because he was new there and "[t]hat's just for the senior guys[.]" (*Id.* at 43).

Yadira Rosa, a transportation clerk working at Philabundance, was responsible for reviewing statements for Philabundance fuel purchases. When she reviewed the statements for July 2010, she discovered that Sunoco Gas Card 003 (Card 3) had nearly $3,000.00 of unauthorized non-diesel purchases on it. (*See* N.T. Trial, 11/03/14 (afternoon), at 22-23). She reported the discrepancies to Leonardo Bustos, the director of logistics at Philabundance, and Appellant Chaundra Loesch, the director of transportation.

_____

[2] The certified record that was originally transmitted to this Court did not contain official transcripts from the trial in this matter. At our request, the Prothonotary was able to obtain copies of most, but not all, of the trial transcripts. Because the court reporter is no longer employed by the trial court, we have been unable to obtain official certified copies of the notes and testimony of the afternoon session of trial on November 5, 2014, and the entire day of trial on November 7, 2014, and do not anticipate their availability in the future. Accordingly, we have relied on the transcripts included in the reproduced record. (*See* R.R. at 767a-908a, 1145a-1303a).

Appellant Loesch and Mr. Bustos conducted an investigation into the thefts; however, their investigation contained several notable lapses. They did not review their own surveillance or alarm code data to determine who had access to trucks. (**See** Trial Court Opinion, 9/14/15, at 22; N.T. Trial, 11/03/14 (afternoon), at 97, 100-01). Additionally, they did not cross-reference the gas purchases with the mileage on the trucks in its fleet or contact the gas stations where the unauthorized purchases were made to attempt to obtain surveillance footage. (**See** Trial Ct. Op., at 22). Their investigation consisted of calling several gas stations to ask about the thefts. They did not repeat their calls to stations that did not answer, or ask to review any surveillance data from the stations. (**See id.**).

When Appellee arrived at work on August 20, 2010, Mr. Bustos and Appellant Loesch accused him of the theft. He denied stealing the fuel and was fired from Philabundance. (**See** N.T. Trial, 11/05/14 (morning), at 30-33). Immediately after Appellee left the building, Mr. Bustos called the police to report the theft. He told the police that Appellee "is an employee of [Philabundance] and was assigned [its] credit card which was used for unauthorized purchases." (Complaint or Incident Report, 8/20/10).

Detective James Powell of the Philadelphia Police Department was assigned to the case. He interviewed Appellant Loesch, who told him that she did an audit for the July fuel statement and noticed there were "unauthorized charges on the card, I think that says 03, that is assigned to [Appellee's] truck." (N.T. Trial, 11/03/14 (afternoon), at 96; **see id.** at 95).

- 3 -

She told him about $3,000.00 worth of charges on the card, including charges from July 19-20, 2010; however, she failed to tell him that Appellee was not assigned to the truck on those days. (**See id.** at 127-28). Finally, Appellant Loesch indicated that other drivers had access to the truck, but never provided the names of those drivers to Detective Powell. She only identified Appellee as a thief. (**See** Trial Ct. Op., at 10).

Detective Powell did not interview Mr. Bustos; however, he did review the complaint or incident report prepared by another Philadelphia Police Officer following Mr. Bustos's telephone call reporting the theft. (**See id.**). Detective Powell prepared the affidavit of probable cause and the arrest warrant relying exclusively on the information provided by Appellant Loesch and Mr. Bustos. (**See id.** at 9).

Appellee was arrested on December 1, 2010, and charged with theft. He was unable to post bail, and thus spent over three months in jail before all charges against him were dismissed in March, 2011. (**See** N.T. Trial, 11/05/14 (morning), at 62, 66).

On December 20, 2012, Appellee filed an amended[3] complaint against Appellants alleging that they were liable for malicious prosecution. On June 2, 2014, Appellants filed a motion for summary judgment, which the trial court granted in part and denied in part on August 7, 2014. (**See** Order,

_____

[3] Appellee filed his initial complaint on September 19, 2011.

8/07/14). Specifically, the court denied the motion for summary judgment with respect to Appellee's malicious prosecution claim. (*See id.*).

This case proceeded to a jury trial on November 3, 2014. At trial, Appellee presented evidence in support of his claim that Appellants knowingly omitted facts in their reports to the Philadelphia Police Department and wrongfully accused him of making unauthorized purchases of gasoline on Card 3. Contrary to what Appellants told police, Appellee testified that he had never been assigned to a particular truck or a specific credit card. He demonstrated that: unauthorized purchases were made when the truck and Card 3 were assigned to other drivers; the credit cards were kept unsecured in trucks that a large number of employees had access to; and unauthorized purchases had occurred both on Card 3 and other cards prior to Appellee's date of hire. (*See* Trial Ct. Op., at 10-11, 20). Appellee also introduced evidence of Appellants' failure to disclose information to the police about Mr. Bustos's multiple theft related criminal convictions for stealing from previous employers. (*See id.* at 11, 19).

The trial court precluded Appellants from introducing evidence of Appellee's prior arrests. Specifically, his 1996 conviction of unauthorized use of a motor vehicle, for which he was sentenced to a period of probation of two years and two days; his 1997 conviction of possession with intent to deliver (PWID) a controlled substance, for which he was sentenced to a maximum period of incarceration of eight years; and his 1998 conviction of PWID, for which he was sentenced to seven years of probation.

On the last day of trial, the court conferred with counsel about the jury instructions. The court stated its intention to read the malicious prosecution instruction that the parties had agreed on rather than the one it drafted. The proposed instruction was "[eighty] percent agreed upon," with the only objection from Appellee that it did not incorporate his theory of the case. (N.T. Trial, 11/07/14 (afternoon), at 5, R.R. at 1149a; *see id.* at 12-13, R.R. at 1156a-57a). Appellants did not object to the instruction. (*See id.*).

Following closing arguments, the court instructed the jury with regard to the law concerning malicious prosecution and damages. (*See id.* at 130-37, R.R. at 1274a-81a). Thereafter,

> . . . a dispute arose between counsel as to the language of the jury instructions and the special jury interrogatories that would be submitted to the jury on the verdict sheet. [Appellee's] [c]ounsel submitted a proposed verdict sheet that read, "Based on the evidence presented in this case, do you find that the employees of Philabundance, without probable cause and acting with malice, were a determining factor in causing a criminal proceeding to be initiated against [Appellee]?" Counsel for [Appellants] took issue with the portion of the special interrogatory that read "were a determining factor," and argued that the appropriate language should be "were the determining factor". . . .
>
> . . . The verdict sheet drafted by [the trial c]ourt was shown to [c]ounsel in the morning prior to closing argument. Counsel for [Appellants] initially agreed to the content of the verdict sheet, then at the last minute, [after it had been read to the jury and] while it was about to be handed to the jury, raised an objection to the terminology. . . .

(Trial Ct. Op., at 16) (record citation omitted); (*see* N.T. Trial, 11/07/14 (afternoon), at 5, 144, 146-47, R.R. at 1149a, 1288a, 1290a-91a,). The

- 6 -

trial court found that Appellants' objection to the wording was waived. (***See id.*** at 147, R.R. at 1281a).

That afternoon, the jury rendered a verdict in favor of Appellee and against Appellants, awarding Appellee damages in the amount of $500,000.00—$125,000.00 for malicious prosecution and $375,000.00 in punitive damages. (***See id.*** at 155-56, R.R. at 1299a-1300a).

Appellants filed a post-trial motion on November 17, 2014, which the trial court denied on February 4, 2015. On March 2, 2015, the court entered judgment on the verdict in favor of Appellee and against Appellants. This timely appeal followed.[4]

Appellants raise nine issues on appeal:

1. Whether the [trial] court erred in refusing to grant judgment as a matter of law to [Appellants], either through nonsuit, directed verdict or JNOV [(judgment non obstante verdicto)], where there was no evidence that [Appellants] knowingly made false statements to law enforcement authorities, or that pressure by [Appellants] was the determining factor in the decision to arrest [Appellee], and where the lower court applied an incorrect legal standard in holding that [Appellants] could be liable simply for "omission or failure to disclose" information even though the police had not requested the information[?]

2. Whether the [trial] court erred in refusing to grant judgment as a matter of law to [Appellants], where the evidence showed without doubt that [Appellants] had probable cause to identify [Appellee] as the perpetrator of the thefts[?]

_____

[4] Appellants filed a notice of appeal on March 4, 2015. Pursuant to the trial court's order, they filed a timely statement of errors complained of on appeal on April 23, 2015. *See* Pa.R.A.P. 1925(b). The trial court entered its opinion on September 14, 2015. *See* Pa.R.A.P. 1925(a).

3. Whether the trial court erred in refusing to grant judgment as a matter of law to [Appellants], where there was no evidence that [Appellants] acted with malice toward [Appellee] in reporting the crimes to law enforcement[?]

4. Whether [Appellants were] entitled to a new trial where Jury Interrogatory No. 1 misstated the law of Pennsylvania regarding malicious prosecution because:

> (a) it stated that [Appellants] could be held liable if [their] conduct was "a" determining factor in the law enforcement officer's decision to commence prosecution, while Pennsylvania law requires that [Appellants'] conduct must have been "the" determining factor in the decision to prosecute; and

> (b) it omitted a critical part of the standard for holding a private citizen liable for reporting a crime to law enforcement authorities, by failing to state that [Appellants] could only be found liable if the jury concluded that [Appellants] knowingly made false statements[?]

5. Whether the trial court erred by admitting extensive, irrelevant and prejudicial evidence relating to [Appellants'] alleged failure to disclose information to the police and [Appellants'] alleged negligent investigation, when Pennsylvania law is clear that the reasonableness of [Appellants'] belief in [Appellee's] guilt, and the sufficiency of [Appellants'] investigation, are irrelevant in a malicious prosecution case; such evidence included:

> (a) evidence of other crimes committed or alleged to have been committed by a non-party, Leonardo Bustos, when such information was not requested by law enforcement nor known to or considered by [Appellants] when [they] reported the crime in question to the police;

> (b) evidence lacking foundation regarding allegedly improper purchases made on credit cards other than the specific card involved in the thefts for which [Appellee] was arrested, when such information was not requested by law enforcement nor known to or considered by [Appellants] when [they] reported the crime in question to the police, and;

(c) evidence regarding [Appellants'] alleged negligent investigation[?]

6. Whether the trial court's jury instruction regarding malicious prosecution misstated the law of Pennsylvania because it failed to state that [Appellants] could only be held liable for making false statements to the police and not for failing to disclose information that had not been requested by the police, thereby prejudicing [Appellants] because [Appellee's] case was based solely on [Appellants'] alleged failure to disclose information[?]

7. Whether the trial court erred by precluding evidence of [Appellee's] numerous prior arrests, when those arrests formed part of law enforcement's determination of probable cause, where [Appellee] opened the door to introduction of this evidence, and where that evidence was relevant to the issue of damages[?]

8. Whether the jury's verdict, both as to liability and damages, was against the law and the weight of the evidence[?]

9. Whether the jury's award of damages, both compensatory and punitive, was so excessive as to shock the conscience[?]

(Appellants' Brief, at 6-9).[5]

Appellants' first three issues concern the trial court's denial of their motion for judgment as a matter of law.

There are two bases on which the court can grant judgment n.o.v.:

[O]ne, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first,

---

[5] Appellants' questions, which include twelve issues and sub-issues, call to mind a prior case in this Court wherein we noted that "the effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them." *J.J. DeLuca Co., Inc. v. Toll Naval Associates*, 56 A.3d 402, 410 (Pa. Super. 2012) (citations omitted).

the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

In an appeal from the trial court's decision to deny judgment n.o.v.,

we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Drake Mfg. Co., Inc. v. Polyflow, Inc.*, 109 A.3d 250, 258–59 (Pa. Super. 2015) (citations omitted).

In their first issue, Appellants claim that the court erred in denying the motion for post-trial relief because there was no evidence at trial that they knowingly made false statements. (*See* Appellants' Brief, at 26-38). Specifically, they contend that under Pennsylvania law, a person who reports a crime can only be held liable for malicious prosecution for providing false information to law enforcement, not for knowingly omitting information. (*See id.* at 26-32). They argue that there was no evidence that they provided false information to the police. (*See id.* at 33-34). Therefore, they claim that the court applied an incorrect legal standard when it held that they could be liable for an omission. (*See id.* at 35-38). We disagree.

- 10 -

"A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." ***Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249***, 544 A.2d 940, 941 (Pa. 1988) (citation omitted).

A private individual may liable for malicious prosecution:

> if (a) he initiates or procures the [institution of criminal] proceedings without probable cause and primarily for a purpose other than that of bringing the offender to justice, and (b) the proceedings have terminated in favor of the accused. Criminal proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused.

***Bradley v. Gen. Acc. Ins. Co.***, 778 A.2d 707, 710 (Pa. Super. 2001) (citation omitted).

Under Pennsylvania law, a private citizen who reports a suspected crime to law enforcement may be found to have instituted criminal proceedings if he or she (1) knowingly provides false statements to an official; or (2) directs or pressures an official to initiate charges. ***See id.*** at 711.

Here, evidence at trial revealed that Appellant Loesch told the investigating officer that the unauthorized charges were on the card assigned to "[Appellee's] truck." (N.T. Trial, 11/03/14 (afternoon), at 96; ***see id.***). Additionally, Mr. Bustos told the police that Appellee "is [an]

- 11 -

employee of [Philabundance] and was assigned [its] credit card which was used for unauthorized purchases." (Complaint or Incident Report, 8/20/10). Detective Powell did not conduct a separate investigation and relied exclusively on information provided by Appellant Loesch and Mr. Bustos in his decision to commence the prosecution. (*See* Trial Ct. Op., at 9).

Therefore, when considering the evidence in the light most favorable to Appellee as verdict winner, as required by our standard of review, we conclude that the trial court's finding, that Appellee produced sufficient evidence that Appellants affirmatively presented false information, is supported by the record. *See Drake Mfg. Co., Inc.*, *supra* at 258–59. We agree that the evidence at trial showed that Appellant Loesch and Mr. Bustos provided false information, which was the basis for Detective Powell's decision to prosecute Appellee for the theft. Therefore, we conclude that the court properly found that Appellants initiated criminal proceedings and could be liable for malicious prosecution.

Moreover, to the extent that Appellants argue that the court applied an incorrect standard and held them liable for omitting facts rather than providing false statements, their claim would still not merit relief. Our standard of review of questions of law is *de novo*. *See Bowling v. Office of Open Records*, 75 A.3d 453, 476 (Pa. 2013).

Appellants rely on *Bradley*, *supra* and *Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d Cir. 1993), *overruled by Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995), in support of their proposition. (*See* Appellants' Brief, at

26-32). In **Bradley**, this Court held that where an insurance company provided information about a fraud that they believed to be true, and appellants did not assert that the insurance company provided false information, the insurance company was not liable for malicious prosecution. **See Bradley**, **supra** at 712. In **Griffiths**, the Third Circuit Court of Appeals applied Pennsylvania law and determined that the trial court erred by charging the jury on the assumption that appellants initiated the proceedings because appellants did not demand appellee's prosecution and did not even accuse appellee of the thefts. **See Griffiths**, **supra** at 464-65.

Preliminarily, we note that "this Court is not bound by the decisions of federal courts, other than the United States Supreme Court . . . . [H]owever, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." **Eckman v. Erie Ins. Exch.**, 21 A.3d 1203, 1207 (Pa. Super. 2011). Here, however, Appellants' relied on an overruled case, **Griffiths**, upon which we do not rely.

Appellants have not cited to, nor has our research revealed any case of this Court, or the Pennsylvania Supreme Court, holding that knowingly omitting a material fact cannot provide the basis for liability of a private citizen for instituting a criminal proceeding. However, several federal district court cases have interpreted Pennsylvania state law in this area. **See id.** Thus, we will look to the Restatement (Second) of Torts, section 653, and consider the federal court's interpretation of Pennsylvania law for guidance in determining whether a knowing omission of material fact is sufficient to

- 13 -

constitute the initiation of criminal proceedings. *See Gallucci v. Phillips & Jacobs*, 614 A.2d 284, 290 (Pa. Super. 1992), *appeal denied*, 625 A.2d 1193 (Pa. 1993) (considering Restatement to determine what is sufficient to constitute initiation of criminal proceedings when review of case law determined there are no cases that directly answer question).

"Malicious prosecution in Pennsylvania has developed to a large extent based upon the Restatement of Torts (Second) Sections 653 and 654." *Id.* Comment g, of section 653, concerns liability for private persons who institute criminal proceedings by giving information to a public official. *See* Restatement (Second) of Torts § 653, Comment g. It explains:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a

public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

*Id.*

In ***Bristow v. Clevenger***, 80 F.Supp.2d 421 (M.D. Pa. 2000), the federal district court held that "omitted material information . . . would supply a basis for malicious prosecution." ***Bristow***, ***supra*** at 433 (citation omitted). Likewise, in ***Gilbert v. Feld***, 842 F.Supp. 803 (E.D. Pa. 1993), the court applied Pennsylvania law and reasoned that, "inaccuracies and omissions may be relevant to . . . the question of who initiated the criminal proceedings." ***Gilbert***, ***supra*** at 819 n.33.

Upon review, we conclude that under Pennsylvania law, knowingly omitting material facts from information provided to a prosecuting officer may constitute instituting criminal proceedings, which would form the basis of liability for malicious prosecution. ***See Bowling***, ***supra*** at 476; ***Bristow***, ***supra*** at 433; ***Gilbert***, ***supra*** at 819 n.33; Restatement (Second) of Torts § 653.

Thus, even if Appellee had not introduced evidence of Appellants' false statements to police, the evidence that he presented regarding Appellants knowing omission of material facts would have been sufficient to establish malicious prosecution. (***See*** Trial Ct. Op., at 10-11). Such omissions consisted of the fact that Appellee was assigned to drive trucks on a rotating basis, all drivers for Philabundance had access to trucks and their respective

fuel cards, and unauthorized purchases were made when the truck and fuel card in question were assigned to other drivers. (*See id.*)

Therefore, we conclude that the evidence sufficiently established the first step of malicious prosecution, that Appellants instituted criminal proceedings against Appellee. *See Kelley*, *supra* at 941; *Bradley*, *supra* at 710. Appellants' first claim does not merit relief.

In their second issue, Appellants claim that the trial court erred in denying their motion for judgment as a matter of law because the evidence showed that they had probable cause to identify Appellee to the police. (*See* Appellants' Brief, at 38-41). Specifically, they argue they had probable cause because the evidence pointed to a Philabundance employee as the perpetrator of the theft using Card 3, and Appellee had been driving the truck to which Card 3 was assigned on four of the nine days that unauthorized purchases were made. (*See id.* at 38-39). We disagree.

> In an action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings without probable cause, with malice, and that the proceedings were terminated in favor of the plaintiff. Absence of probable cause is an indispens[a]ble element of the action, and it is not conclusively established by an adjudication of innocence in the prior proceeding.
>
> . . . [T]he presence or absence of probable cause is a question exclusively for the court where there are no material conflicts in the testimony. However, where, as here, material facts are in controversy, the question is a mixed one [of law and fact] and it becomes the duty of the jury, under proper instructions from the court as to what will justify a criminal prosecution, to say whether the plaintiff in the civil action has shown want of probable cause upon the part of the defendant.

Probable cause is defined as . . . a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense. The reasonable ground of suspicion, however, must not be based upon an inadequate and unreasonable investigation of the circumstances concerning the alleged criminal conduct.

***Wainauskis v. Howard Johnson Co.***, 488 A.2d 1117, 1122-23 (Pa. Super. 1985).

Here, Appellant Loesch testified that, during the internal investigation into the theft, she failed to look at any other fuel card purchases to see if improper purchases were made, and failed to look at surveillance cameras from the truck lot to see if anybody else had accessed Card 3. (***See*** N.T. Trial, 11/03/14 (afternoon), at 97, 100-01). Appellants admitted that the cards were kept unsecured in the vehicles and all Philabundance drivers had access to them. Therefore, viewing the evidence in the light most favorable to Appellee as verdict winner, the evidence supports the jury's conclusion that Appellants did not have probable cause to accuse him of the theft where their alleged reasonable ground for suspicion was based upon an inadequate investigation. ***See Drake Mfg. Co., Inc.***, ***supra*** at 258–59; ***Wainauskis***, ***supra*** at 1122-23. Thus, the evidence sufficiently establishes the second element of malicious prosecution, lack of probable cause. ***See Kelley***, ***supra*** at 941; ***Bradley***, ***supra*** at 710. Accordingly, Appellants' second issue does not merit relief.

In their third issue, Appellants claim that the trial court erred in denying their motion for judgment n.o.v. because the evidence did not show

that they acted with malice toward Appellee. (*See* Appellants' Brief, at 42-43). We disagree.

> In order for plaintiff to recover he is required to prove not only lack of probable cause, but the existence of malice. The question of the existence of malice is always a question of fact exclusively for the jury. Malice may be inferred from want of probable cause. Legal malice is not limited to motives of hatred or ill will, but may consist of defendant's reckless and oppressive disregard of plaintiff's rights.

*Hugee v. Pa. R.R. Co.*, 101 A.2d 740, 743 (Pa. 1954) (citations and emphasis omitted). Thus, where defendants did not have probable cause to initiate criminal proceedings, we may infer that they acted with malice. *See id.*

Here, Appellants did not overcome this inference. As discussed above, the evidence was sufficient to support the jury's finding that Appellants acted without probable cause when they initiated proceedings against Appellee. Additionally, the evidence supports that Appellants affirmatively presented false information when Mr. Bustos told the officer that the charges came from the card assigned to Appellee, and Appellant Loesch told Detective Powell that the card was assigned to Appellee's truck. (*See* N.T. Trial, 11/03/14 (afternoon), at 95-96; Complaint or Incident Report, 8/20/10).

Accordingly, we conclude that the trial court properly denied Appellants' motion for judgment n.o.v. where they failed to show that Appellee did not establish malice. *See Hugee*, *supra* at 743; *Drake Mfg. Co., Inc.*, *supra* at 258–59. Thus, the evidence sufficiently establishes the

third element of malicious prosecution. **See Kelley**, **supra** at 941; **Bradley**, **supra** at 710. Appellants' third issue does not merit relief.

In their fourth issue, Appellants claim that the trial court erred in denying their request for a new trial because of misstatements of law in Jury Interrogatory No. 1. (**See** Appellants' Brief, at 53-56). Specifically they argue that the interrogatory misstated the law because it contained the phrase "a determining factor" rather than "the determining factor" in its question as to whether Appellants' conduct brought about Appellee's prosecution. (**See id.** at 53-55). Furthermore, they argue that the interrogatory misstated the law because it did not ask the jury whether Appellants knowingly provided false statements to law enforcement officials. (**See id.** at 55-56). We disagree.

> The primary question before us is whether the verdict slip was defective so as to require a new trial. The award of a new trial is proper only where a trial court has committed an error of law or abuse of discretion which may have affected the verdict.
>
> \*　\*　\*
>
> It is well established that in order for a party to be awarded a new trial, the moving party must demonstrate that it was prejudiced by the alleged error of the trial court. . . . [A]llegations of error are harmless where the jury is not required to deliberate over the issue out of which the alleged error arises in order to reach its verdict.

**Boyle v. Indep. Lift Truck, Inc.**, 6 A.3d 492, 494, 496 (Pa. 2010) (citations omitted).

Here, the trial court explained that it "drafted the verdict sheet and inadvertently inserted the words 'a determining factor' in the proposed jury

- 19 -

interrogatory. It had intended to mirror the language of the first element of the test for malicious prosecution in the special jury interrogatory, but inadvertently inserted the letter 'a' for the word 'the'." (Trial Ct. Op., at 16) (record citation omitted).

However, as the trial court noted, any such error was harmless where:

the disputed language was largely irrelevant to the [j]ury's ability to resolve this matter. [Appellee's] case focused primarily on the theory that [Appellants] lied by omission when reporting the theft of gas to law enforcement officials. The first element for the test to establish malicious prosecution, reads that the [d]efendant must have, "knowingly provided false statements to a law enforcement official or the defendant's desire to have proceedings initiated was the determining factor in the law enforcement official's decision to commence prosecution." A plain reading of this rule illustrates that the test may[ ]be satisfied by an either or analysis, and this matter was based primarily on the theory that [Appellants] knowingly provided false information to law enforcement officials—that [Appellants] omitted key facts and lied by omission in reporting the theft of donated gasoline to law enforcement officials. Therefore, the issue of whether [Appellants] w[ere] "a" or "the" determining factor in the criminal prosecution of [Appellee] was not seriously at issue in the case *sub justice*.

(*Id.* at 17).

We agree with the trial court's conclusion that any error stemming from using the phrase "a determining factor" rather than "the determining factor" was harmless. **See Boyle**, **supra** at 496. We further conclude that, based on Appellee's presented theory of the case, the jury did not deliberate on the issue of whether Appellants' desire to have proceedings initiated was "the" or "a" determining factor; thus any allegation of error is harmless. **See Boyle**, **supra** at 494, 496. Finally, as discussed above, there is no

merit to Appellants' contention that the trial court erred by including language in the interrogatory permitting a finding of liability for knowingly omitting material facts. Appellants' fourth issue does not merit relief.

In their three-part fifth issue, Appellants claim that the trial court erred by admitting evidence, which they claim was irrelevant.[6] (***See*** Appellants' Brief, at 43-44). Specifically, they claim that the court erred in admitting evidence of Mr. Bustos's criminal background, (***see id.*** at 44-48), unauthorized purchases on other credit cards, (***see id.*** at 48-51), and Appellants' negligent investigation, (***see id.*** at 51-53). We disagree.

> "[W]hen reviewing the denial of a motion for new trial, we must determine if the trial court committed an abuse of discretion or error of law that controlled the outcome of the case. . . . Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."

***Brady v. Urbas***, 80 A.3d 480, 483 (Pa. Super. 2013), *affirmed*, 111 A.3d 1155 (Pa. 2015) (citations omitted).

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a

---

[6] Although Appellants' brief asserts that this evidence lacked foundation, was unduly prejudicial, and was hearsay, they failed to develop any legal argument in support of those contentions. (***See*** Appellants' Brief, at 43-53). "When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 584 (Pa. Super. 2014) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citations omitted). Therefore, we will only discuss Appellants' relevancy claims.

reasonable inference or presumption regarding a material fact." ***Smith v. Morrison***, 47 A.3d 131, 137 (Pa. Super. 2012), *appeal denied*, 57 A.3d 71 (Pa. 2012) (citation omitted).

Here, the trial court permitted Appellee to introduce evidence of Mr. Bustos's prior convictions for stealing from previous employers. It found such evidence relevant to Appellee's claim that Appellants knowingly omitted material facts when they accused him of theft. (***See*** Trial Ct. Op., at 19).

Upon review, we agree with the trial court's finding that such evidence is directly relevant to whether Appellants' probable cause was based on "an inadequate and unreasonable investigation[.]" ***Wainauskis***, ***supra*** at 1122-23. Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence of Mr. Bustos's prior convictions for stealing. ***See Brady***, ***supra*** at 483. The first part of Appellants' fifth issue does not merit relief.

With regard to the second part of Appellants' fifth issue, evidence of unauthorized purchases on other credit cards, the trial court found that:

> All of the unauthorized purchases of fuel on the Sunoco account that occurred during the time period in question were relevant and probative to issues of material fact such as: the determination of whether [Appellants] acted with probable cause when identifying [Appellee] as a [thief]; whether [Appellants'] agents lied by omission; and whether they acted with malice when identifying [Appellee] to law enforcement officials.

(Trial Ct. Op., at 21).

Upon review, we agree with the trial court's finding, and conclude that it did not abuse its discretion in permitting evidence of unauthorized

- 22 -

purchases of fuel that occurred on other cards. *See Brady*, *supra* at 483. The second part of Appellants' fifth issue does not merit relief.

Finally, in regard to the third part of Appellants' fifth issue, evidence of their negligent investigation, the trial court found that:

> [e]vidence surrounding [Appellants'] investigation, or lack thereof, and its failure to convey key facts to law enforcement officials was relevant and probative of the question of whether [Appellants] had probable cause to suspect [Appellee] made unauthorized purchases, whether [Appellants'] agents omitted key facts from their statements to law enforcement officials, and whether [Appellants] acted with malice.

(Trial Ct. Op., at 21-22). Furthermore, it found that the investigatory lapses "constituted circumstantial evidence that the [j]ury was permitted to assess when considering whether [Appellants], . . . intentionally lied by way of omission when reporting the unauthorized purchases on the Sunoco account." (*Id.* at 22).

We agree with the trial court's finding and conclude that it did not abuse its discretion in permitting evidence surrounding Appellants' investigatory lapses where that evidence was relevant to the question of probable cause, malice, and whether Appellants knowingly omitted material facts. *See Hugee*, *supra* at 743; *Brady*, *supra* at 483; *Wainauskis*, *supra* at 1122-23. Appellants' argument with respect to admission of evidence of their investigation fails, and their fifth issue does not merit relief.

In their sixth issue, Appellants claim that they are entitled to a new trial because the court's jury instruction concerning malicious prosecution misstated the law where it did not state that Appellants could only be liable

for making false statements. (**See** Appellants' Brief, at 56-58). Appellants' argument, which is premised on their claim that Pennsylvania law does not impose liability for malicious prosecution for omitting material facts, does not merit relief.

"It is well settled that [a]n inadequate jury instruction may amount to reversible error if it has a tendency to mislead the jury or if it omits material, which is basic and fundamental." **Machado v. Kunkel**, 804 A.2d 1238, 1244 (Pa. Super. 2002), *appeal denied*, 819 A.2d 547 (Pa. 2003) (citations and quotation marks omitted).

As discussed above, knowingly omitting material facts when reporting a suspected theft to law enforcement may constitute initiating criminal proceedings and form the basis for liability for malicious prosecution. Thus, the trial court's jury instruction to that effect is not inadequate, nor does it have a tendency to mislead the jury. **See Machado**, **supra** at 1244. Therefore, Appellants' sixth issue is meritless.

In their seventh issue, Appellants claim that the trial court erred by precluding evidence of Appellee's prior arrests. (**See** Appellants' Brief, at 59-62). Specifically, they claim that the arrests should have been admitted because they formed the basis of law enforcement's decision to arrest Appellee as a suspect in the theft, and the evidence was relevant to the issue of damages. (**See id.**). We disagree.

"The admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed

absent an abuse of discretion." ***Commonwealth v. Patterson***, 91 A.3d 55, 68 (Pa. 2014), *cert. denied*, 135 S.Ct. 1400 (2015) (citation omitted).

Preliminarily, we note that Appellants' brief does not specifically differentiate which arrests they claim should have been admitted, or why each of those arrests was admissible. (***See*** Appellants' Brief, at 59-62). They do not argue that Appellee's convictions should have been admitted as impeachment evidence pursuant to Pennsylvania Rule of Evidence 609. Rather, they argue that his arrest record generally should have been admissible to show that they had probable cause to suspect that Appellee had stolen gasoline, that Detective Powell's investigation, and decision to arrest Appellee, was guided by his arrest record, and that evidence of his arrests were relevant to damages. (***See*** Appellants' Brief, at 59-61). We disagree.

In its opinion, the trial court explained that, in precluding evidence of Appellee's arrest record, it "attempted to balance the competing interests of the parties . . . in conjunction with well-established law to reach an equitable resolution on how to handle [Appellee's] arrest record." (Trial Ct. Op., at 30). It held that because the arrests occurred more than ten years ago and did not involve *crimen falsi* convictions, they were not admissible for impeaching Appellee's credibility. (***See id.***). Additionally, it held that the arrests were not admissible to show that Appellants had probable cause to suspect that Appellee had stolen gasoline because "[n]o similarity could be drawn between the allegations in the prior arrests and the theft of gasoline

as alleged in the underlying criminal matter." (***Id.***). Furthermore, the court recognized that the arrests could be relevant to damages in the matter, if Appellee testified that he was humiliated by being arrested; however, Appellee did not seek damages for injury to reputation. (***See id.*** at 31). Finally, the court did permit admission of evidence that Appellee was on parole for a felony drug conviction at the time of his arrest. (***See id.*** at 31-32).

Upon review, we conclude that the trial court did not abuse its discretion in precluding Appellants from introducing evidence of Appellee's prior arrests where Appellants sought to introduce evidence of arrests rather than just convictions, and where the relevance of such arrests was minimal. ***See Patterson***, ***supra*** at 68. Appellants' seventh issue does not merit relief.

In their eighth issue, Appellants claim that the jury's verdict was against the law and the weight of the evidence. (***See*** Appellants' Brief, at 9, 58). Appellants' issue lacks merit.

> It is well settled that the grant of a new trial is a matter within the discretion of the trial court. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way. Our standard of review of the denial of a motion for a new trial is not different from the grant of a new trial. Our standard of review of an order denying a motion for a new trial is to decide whether the trial court committed an error of law that controlled the outcome of the case or committed an abuse of discretion.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

. . . This Court has recognized that a weight of the evidence challenge concedes that there was evidence sufficient to sustain the verdict, but the verdict was against the weight of the evidence. We may not substitute our judgment for that of the trial court, we must only decide whether the trial court abused its discretion. Credibility issues are determined by the jury, and this Court rarely overturns the factual findings of a jury that are based on determinations of credibility, because we are confined to review a cold record.

**Fanning v. Davne**, 795 A.2d 388, 393–94 (Pa. Super. 2002), *appeal denied*, 825 A.2d 1261 (Pa. 2003) (citations and quotation marks omitted).

Here, Appellants have not argued or demonstrated that the trial court abused its discretion when it denied their motion for a new trial on the basis of the weight of the evidence.[7] They merely claim, "the elements of malicious prosecution were not established by a preponderance of the evidence." (Appellants' Brief, at 58). Appellants failed to advance an

_____

[7] Appellants have invoked the standard for a sufficiency of the evidence claim rather than a weight of the evidence claim where they have argued that "[Appellee] did not present any evidence to show that several of the elements of malicious prosecution were met[,]" and "even viewing all the evidence and reasonable inferences therefrom in the light most favorable to [Appellee], the elements of malicious prosecution were not established by a preponderance of the evidence." (Appellants' Brief, at 58).

argument that invokes the appropriate standard of review. *See Fanning*, *supra* at 393-94.

Moreover, our independent review of the record reveals that the trial court properly viewed the issue as one of credibility, which the jury was free to resolve in Appellee's favor. (*See* Trial Ct. Op., at 34-36); *Fanning*, *supra* at 393-94. The court determined that "[i]t cannot be said that the verdict was so contrary to the evidence that it shocks th[e trial c]ourt's sense of justice." (Trial Ct. Op., at 36). Therefore, we conclude that the trial court did not abuse its discretion in denying Appellants' motion for a new trial based on the weight of the evidence. *See Fanning*, *supra* at 393-94. Appellants' eighth claim does not merit relief.

Finally, because Appellants did not provide any argument, legal or otherwise, in support of their ninth issue, that the jury's award of damages was so excessive as to shock the conscience, they have waived that issue. (*See* Appellants' Brief, at 9); *Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa. Super. 2006) (holding failure to offer analysis or case citation in support of relief results in waiver).

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2017